OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1909.

*(Continued from Volume 221)*

## HELEN M. MANN v. CHRISTIAN DOERR and J. WILLIS KAHL, Appellants.

(Two Cases Consolidated.)

Division One, July 1, 1909.

1. **JUDGMENT: Separate Counts.** The statutes contemplate but one final judgment, although the petition may contain several counts, some at law and some in equity, and although separate trial be had thereon, at the same or at different terms of court.

2. **————: ————: Appeal: Premature: Waiver.** Where plaintiff, who sued on two counts, one to quiet title and the other in ejectment, obtained a severance of the two counts and obtained judgment on the equity count, from which defendants appealed, and then the trial proceeded on the law count and another judgment was entered, from which defendants also appealed, plaintiff cannot be heard to contend that the first appeal·was premature, for she procured the judgment (which is final in form) to be entered.

3. **SEPARATE TRIALS: Quieting Title: Ejectment.** Separate trials may be allowed under a petition in two counts, one to quiet title and the other in ejectment. The causes of action stated in the two counts are not the same; they both involve

222 Sup.—1                                        (1)

Mann v: Doerr.

title, but by the ejectment possession is sought, and the action to quiet title may be brought by a plaintiff either in or out of possession.

4. **MISJOINDER OF PARTIES: Quieting Title.** The landlord and his tenant may be joined as parties in a suit to ascertain and determine the title. The tenant under a written lease has an "interest" within the meaning of Sec. 650, R. S. 1899.

5. ———: **In Ejectment.** The landlord out of possession should not in ejectment be joined by plaintiff as a defendant with his tenant in possession. Ejectment should be brought only against the tenant alone in possession. It is the landlord's right to be made a defendant if he chooses, but not the plaintiff's right to make him a defendant if he does not so choose.

6. ———: ———: **Not Reversible Error.** But joining the landlord out of possession as a defendant in the ejectment suit is not ground for reversing on appeal a judgment for plaintiff. Such misjoinder is error, but not error affecting the substantial rights of the parties.

7. ———: ———: ———: **Damages.** A misjoinder of the landlord as a defendant in ejectment is not error affecting his substantial rights, though judgment be rendered against him for damages for wrongfully withholding the possession from plaintiff, if he received the rents.

8. ———: ———: **Waiver: Pleading to Merits.** A landlord, wrongfully joined in ejectment as a defendant with his tenant in possession, the misjoinder not being apparent from the face of the petition and therefore not demurrable, who takes upon himself the burden of the defense—by interposing in his answer his title and his equities as a defense, by asking for judgment for his outlay for improvements, and by tendering testimony in support of those affirmative allegations—waives his plea of misjoinder of parties defendant set up in his answer.

9. **EJECTMENT: Evidence: Decree in Suit to Quiet Title.** Where under the count of the petition to ascertain and determine the title, the court found and entered decree for plaintiff, that decree may be introduced by plaintiff as evidence of title in a subsequent separate trial of the count in ejectment. Nor did the fact that the court before the trial of the ejectment had entered that decree in the form of a final judgment, and a separate appeal therefrom had been taken by defendants and a supersedeas bond given, render the decree inadmissible.

10. ———: **Improvements: Set-Off.** The defendant in ejectment, not holding possession or claiming title through plaintiff, is not entitled to have the value of the improvements placed upon the land by him set off against the damages, or to be reim-

bursed for them in that suit. His remedy is by a new suit, independent in character, commenced before ouster by writ of possession.

11. **QUIETING TITLE: Fraudulent Conveyance.** For the reasons set forth in Welch v. Mann, 193 Mo. 304, based largely on the same evidence, and deferring to the finding of the chancellor on the questions of fact, it is held that a deed made by a husband to his wife in pursuance to an antenuptial contract was not fraudulent, and that she took the title thereto instead of a defendant who purchased at a subsequent execution sale under a judgment against the husband.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

AFFIRMED.

*C. W. Chase* and *Paul Byrd* for appellants.

(1) The court erred in granting separate trials upon the separate counts of the petition. Peters v. Berkmeier, 184 Mo. 400; Graves v. Ewert, 99 Mo. 18; Davis v. Sloan, 95 Mo. 552; Stark v. Kirchgraber, 186 Mo. 633; Pitts v. Sheriff, 108 Mo. 116; R. S. 1899, sec. 4589; Bedford v. Sykes, 168 Mo. 15; Sidell v. Cornwell, 166 Mo. 54; Lane v. Dowd, 172 Mo. 167; Morrison v. Herrington, 120 Mo. 665; Ball v. Woolfolk, 175 Mo. 285. (2) The evidence was insufficient to show an antenuptial contract. (3) Even if there had been an antenuptial contract between Morris Mann and Helen Mann, a conveyance made in pursuance thereof would have been void as to creditors, because the antenuptial contract was not recorded as provided by law. R. S. 1889, secs. 6853, 6854, 6855; Wilkinson v. Rozier, 19 Mo. 443. (4) If Morris Mann, after his engagement to plaintiff, told her that he would give her the farm some day, the promise was without consideration, and a conveyance was voluntary. Chambers v. Sallie, 29 Ark. 409; 21 Cyc., 1248, par. c.; 2 Lawson's Rights,

Remedies and Practice, sec. 755, p. 1386; Ogden v. Ogden, I Bland (Md.) 284. (5) The conversations between Morris Mann and respondent, alleged to have taken place before the engagement, were insufficient to establish an antenuptial contract. They were, if said, at most, only the expressions of an intention. Lamb v. Lamb, 18 N. Y. App. Div. 250, 46 N. Y. Supp. 219; Stewart v. Reckless, 24 N. J. L. 430; Schockley v. Mills, 71 Ind. 288. (6) If a transfer is made by a debtor in anticipation of a suit against him, or during the pendency of a suit against him, this is a badge of fraud. 20 Cyc., 444; Bump on Fraud. Conv. (4 Ed.), sec. 50, p. 46; Mason v. Perkins, 180 Mo. 708; Glenn v. Glenn, 17 Iowa 503; Booher v. Worrill, 53 Ga. 235. (7) The fact that Morris Mann conveyed all his attachable property to his wife, is a badge of fraud. Benne v. Schnecko, 100 Mo. 256; Boyd v. Jones, 60 Mo. 454; Bump on Fraud. Conv. (4 Ed.), sec. 37, p. 33; 20 Cyc., 449. (8) The incorrect statement of the consideration in the deed of conveyance and deed of trust are badges of fraud. Benne v. Schnecko, 100 Mo. 256; Bump on Fraud. Conv. (4 Ed.), sec. 54, p. 41; 20 Cyc., 442. (9) Transactions between husband and wife, to the prejudice of the husband's creditors, are to be scanned closely, and their *bona fides* must be clearly established. Bump on Fraud. Conv. (4 Ed.), p. 56; Bank v. Fry, 168 Mo. 513; Scharff v. McGaugh, 205 Mo. 344; Dresher v. Corson, 23 Kan. 315; Reese v. Schell, 95 Ga. 751; Blow v. Maynard, 2 Leigh (Va.) 47; Benne v. Schnecko, 100 Mo. 257; Besson v. Eveland, 26 N. J. Eq. 472; Booher v. Worrill, 53 Ga. 238; Waite on Fraud. Conv., sec. 300, p. 526. (10) The conveyance of January 27, 1896, by Mann to his wife was fraudulent and void as to his creditors, because, being voluntary, it left him without sufficient property for the satisfaction of his then existing debts. Grocer Co. v. Walker, 69 Mo. App. 553; Potter v. McDowell, 31 Mo. 72; Patten v. Casey, 57 Mo. 118; Snyder v.

Free, 114 Mo. 369; Scharff v. McGaugh, 205 Mo. 364. (11) A voluntary conveyance will not be upheld as against an existing creditor who cannot obtain satisfaction of his demand without resorting to the property so conveyed. Obermeir v. Tressler, 19 Mo. App. 522; Hastings v. Crosslands, 13 Mo. App. 592; 14 Am. and Eng. Ency. Law (2 Ed.), 302.

*Meservey & German* for respondent.

(1) The court did not err in ordering a separate trial on each count. Counts of law and equity united in the same petition require separate trials. Crowe v. Peters, 63 Mo. 429; James v. Moore, 42 Mo. 413; Henderson v. Dickey, 50 Mo. 161; Boeckler v. Railroad, 10 Mo. App. 448; R. S. 1899, sec. 694; McFarland v. Railroad, 125 Mo. 275; Smith v. Baer, 166 Mo. 402. (2) The appeal should be dismissed because it was prematurely taken. The record does not show that the second count has proceeded to judgment, or that any final disposition has been made of it. Courtney v. Blackwell, 150 Mo. 273; Baker v. St. Louis, 189 Mo. 378; Rock Island Implement Co. v. Mann, 168 Mo. 252; Oliver v. Lowe, 104 Mo. App. 84; Miller v. Railroad, 162 Mo. App. 437; State v. Ryan, 115 Mo. App. 414; Diamond Match Co. v. Railroad, 121 Mo. App. 43; R. S. 1899, sec. 694. (3) The conveyance to plaintiff was not made in fraud of the creditors of the grantor Morris Mann. Even though Morris Mann was in debt at the time of the conveyance to plaintiff, and if we also consider the conveyance a gift, still it was not fraudulent, because he had more than sufficient property left to satisfy all his debts. Bank v. Simpson, 152 Mo. 656; Bank v. Thornburrow, 109 Mo. App. 639; Fehlig v. Busch, 165 Mo. 144. Marriage is a sufficient consideration to support a conveyance, and marriage contracts are favored by the law. Bank v. Read, 131 Mo. 553; Powell v. Moeller, 107 Mo. 471; Lionber-

ger v. Baker, 88 Mo. 447; Marshall v. Morris, 16 Ga. 368; Nowack v. Berger, 133 Mo. 24; Welch v. Mann, 193 Mo. 316; Buffe v. Buffe, 88 Mo. App. 627.

LAMM, P. J.—Two cases were brought here with above title, each an appeal by defendants from a judgment in favor of plaintiff—one from a judgment on the first count of a petition, the other on a second. The first count is under section 650. In that plaintiff charges she is the owner of ten acres of land described by metes and bounds lying in Jackson county (the description is complicated and is omitted); that defendants and each of them are claiming some title, interest and estate in the property, etc. Wherefore, plaintiff prayed the court to ascertain, determine and adjudge title, etc., as provided in section 650. The second count is in common form in ejectment, laying ouster as of October 1, 1902, and putting monthly rents at $25 and damages at $675.

To this petition defendant Doerr filed separate answers by counts. To the first count he answered, in substance, that one Morris Mann was the owner of the property; that while such owner on a certain date in January, 1896, he was heavily indebted and unable to pay his debts; that for the sole purpose of defrauding his then creditors he executed a warranty deed conveying the property to plaintiff, then his wife, who was a party to the fraud; that the deed was at once put of record, was without consideration in fact and expressed a consideration many times the value of the property; that as part of the fraudulent scheme, plaintiff and her husband, Morris, at once executed a sham deed of trust to a trustee for defendant, Christian Doerr, beneficiary, pretending to secure a pretended note due Doerr for $3,000; that there was no consideration for said note or deed of trust; that the latter was also put of record, and defendant Doerr had no knowledge

of the execution or record of said sham security or simulated note; that plaintiff without the knowledge of her husband subsequently possessed herself of said note and now has the same; that in 1901 a suit was commenced against Morris Mann by one Fish, who was a creditor of his prior to the execution of the warranty deed to Helen; that such proceedings were taken in that case as resulted in a judgment in favor of Fish, in July, 1902, in the Jackson Circuit Court; that an execution was issued on the Fish judgment and levied upon the property in dispute as that of Morris Mann; that defendant Doerr purchased at the execution sale on the 6th day of September, 1902, in good faith for a valuable consideration of $600, with no knowledge of the warranty deed from Morris to Helen or of the sham trust deed in his own favor; that at that time and at all times subsequent to said fraudulent conveyance, Morris Mann was in possession through tenants and receiving rent; that presently, after the land was knocked down to him at sheriff's sale on the Fish execution and judgment and a sheriff's deed executed, the defendant took possession and has since received the rents and is now the owner and entitled to possession; that there is a misjoinder of parties defendant in that defendant Kahl is merely a tenant in possession, claims no title or right other than as tenant and is not a necessary party. This answer was sworn to by Christian Doerr.

In his separate answer to the second count defendant repleads the averments of his answer to the first count. He then avers that while he is the owner of the title he is not in possession of the premises, but that his codefendant, Kahl, is in actual possession and therefore there is a misjoinder of parties defendant. He next avers that he was a purchaser in good faith and for a valuable consideration at the execution sale under the Fish judgment and that since his purchase he had made valuable improvements, *viz.*, set out a

young orchard of one hundred and fifty fruit trees, improved and repaired the house and barn inside and out, constructed a cistern and sunk a well, built chicken houses, etc., to the value of $400 and he prays that if plaintiff recover possession then that he may recover the cost of his improvements and the purchase price by him expended. The answer to the second count is also sworn to by him.

The defendant Kahl disavows any interest in the real estate by his answer to the first count, and all knowledge as to the merits of the controversy; says he is a mere tenant of Doerr and pleads a misjoinder of parties defendant as to that count. As to the second, he denies each and every allegation except he admits actual possession as the tenant of Doerr. He alleges, in effect, that he has no claim or interest in the title to the real estate otherwise than as a tenant, that as to the second count there is a misjoinder of parties defendant for that Doerr has title but is not in possession of the land and is not a necessary party.

In reply plaintiff denied all allegations of the answers relating to new matter; and then makes averments by way of defense to such matter not sustained by the proof and hence immaterial.

At the trial, on motion of plaintiff's attorneys, a severance of the two counts was granted and the trial proceeded on the first. The severance was over the objection of defendants and exception saved. The gist of the objection was that both counts, under the pleadings, were in equity, that the subject-matter of each was the same, to-wit, *title,* that the parties were the same and it was unfair to require either party to go to the trouble and expense of two trials.

On a trial of the merits on the first count, the decree, as said, went in favor of plaintiff and defendants appealed. In their motion for a new trial on that count they alleged error in granting a separate trial, but they did not complain of a judgment on the first count

without awaiting a trial on the second. There was a motion in arrest filed, but there was no ground in that motion that the decree be arrested as premature or that no decree could go until after a trial on the second count—in other words, raising the point that there could be only one final judgment and that should go only after a trial and finding on each count, and cover both.

Subsequently, a trial on the ejectment count was had and judgment went in favor of plaintiff for possession, for $217.15 damages and finding the monthly rental value of the premises at $7.50. From that judgment defendants also appealed here.

At the trial on the second count there was no objection made to the effect that by taking a final judgment on the first count the second was abandoned. There was an objection lodged to proceeding on the second count, put upon the ground that there was a judgment on the first count appealed from by giving a supersedeas bond and the appeal was pending in the Supreme Court and undetermined—*i. e.*, that there was another action pending covering the same cause of action between the same parties. The objection also covering the point made originally against a separate trial on each count, *viz.*, that both counts covered the same issues. Counsel also objected because there was a misjoinder of parties.

It furthermore appears from the record that the case on the second count was set down as a law case but was changed to the equity side of the docket at the request of defendants, acquiesced in by plaintiff. In their motion for a new trial on the second count no error is claimed because the second count was abandoned by taking a prior final judgment on the first, nor is any such contention made in this court.

When these appeals reached this court and came on for hearing they were set down on our trial docket separately. Thereupon defendants filed a motion to

consolidate them into one case, this on the grounds that the separate judgments really constitute but one and the two appeals one appeal. Plaintiff filed suggestions in opposition, this on the theory that while the cases are between the same parties and on separate counts of the same petition, yet they were tried separately and defendants took separate appeals; that the motion to consolidate is but an ingenious attempt to escape the effect of two appeals, from the fact that the appeal from the judgment on the first count was premature. Defendants' motion to consolidate was sustained.

Any further matter material to the determination of errors assigned will appear in the opinion.

I. Whatever the rule elsewhere, in Missouri our Code of Civil Procedure contemplates only one final judgment, although the petition may contain several counts, some at law and some in equity, and although separate trials be had thereon at the same or different terms of court. By Revised Statutes 1899, section 694, it is provided that "the judgment upon each separate finding shall await the trial of all the issues." See, further, section 773. Plaintiff's counsel contend that defendants cannot be heard on their appeal from the judgment on the first count because the appeal is premature. But plaintiff may not say that. She procured the judgment to be entered. It was final in form. It was self-executing and adjudged the title to be in her, and either she had a final judgment destroying defendants' title or else she had no judgment at all, and, on the latter theory, the cause is still pending below on the first count. If the judgment below was erroneously entered there is reason in defendants' appeal, viz., that they be eased of it. If it was not erroneously entered then the appeal cannot be premature. Either way, we rule the point against plaintiff.

## II. Of the assignment of error in granting separate trials.

The argument of learned counsel for defendants in that behalf proceeds on a misapprehension. The causes of action stated in the first and second counts were not the same, as they argue. Though title was in issue on the second count as in the first, the second count was in ejectment and the object sought was possession. Not so in the first. That count was under section 650. An action under that section lies in favor of one in or out of possession and against one in or out. The object to be attained is "to ascertain and determine the estate, title and interest of said parties respectively in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."

Obviously section 650 does not contemplate a judgment for possession and that a writ of ouster go. This for the very good reason that under that section one *in* possession may sue one *out*. The precise point has been ruled and is no longer open. [Bedford v. Sykes, 168 Mo. 8.] So that, broad and flexible as the section is in terms, it does not take the place of ejectment.

Since our code permits the uniting of different causes of action in the same petition (R. S. 1899, sec. 593), to avoid multiplicity of suits, the practice has been to unite a count under section 650 with a count in ejectment—the latter to carry into effect the judgment entered on the former. So, under warrant of the code the practice has been to permit separate trials where there is sensible reason for that course—for example, where one count may be triable to a jury and the other to a chancellor.

There was no error in granting separate trials.

**III.  Of misjoinder of parties defendant.** Defendants assign error on this behalf, separating itself logically into two branches.  The one reckons with the first count, the other with the second.  We will consider them in that order.

**(a)  As to the first count.**  The answers allege and the proof shows that Kahl held under a written lease as tenant of Doerr and that he was in possession under such lease when the suit began.  He certainly claimed an "interest" in the property.  Section 650 contemplates that all persons having or claiming to have any title, *estate or interest* may be made parties defendant.  The point is ruled against defendants.

**(b)  Of the second count.**  The question on the second count is more difficult.  In joining causes of action in one petition the statute prescribes that causes so joined "must, affect all the parties to the action." [R. S. 1899, sec. 593, *supra*.]  The reason underlying this provision is apparent.  There must be interests in common in the subject-matter of the litigation before a petition can unite parties as defendants and subject them to common burdens in defense.  Confusion would enter through any other door.  Doubtless on this theory plaintiff joined Doerr and Kahl in the second count, since it would have been improper joinder of causes of action if the second count had been leveled alone against Kahl, the tenant.  The second count says nothing about tenancy.  The fact of Kahl's tenancy appears for the first time in the answer.  Therefore a demurrer would not lie for misjoinder and the fact of misjoinder was properly pleaded in the answer.  Ejectment being a possessory action, a petition would be bad, absent an allegation that defendants are the persons in possession of the *locus in quo.*  Accordingly our statutes provide, as did the common law,

that ejectment should be brought against those persons in possession and that the proof should establish the fact. [R. S. 1899, secs. 3056, 3058 and 3060; Llewellyn v. Llewellyn, 201 Mo. 1. c. 306 *et seq.*; Hunter v. Wethington, 205 Mo. 284.]

Under section 3057 the landlord "may, on motion, be made a codefendant." That statutory provision, it seems, is but declarative of the common law. [Sutton v. Casseleggi, 77 Mo. 1. c. 408.] But section 3057 is in the nature of an *option* extended to the landlord. The option is *his*—not plaintiff's. He can come in or stay out. If he use his option to come in, plaintiff cannot dismiss him from the suit. [Hayden v. Stewart, 27 Mo. 286.] There is a fixed gulf between the proposition that a landlord may come in if he choose, and the other proposition that he may be brought in, *willy nilly*, if plaintiff choose. The Hayden case recognizes that gulf of difference. Its ruling that the landlord may not be dismissed out of the case by plaintiff takes him out of the class of ordinary defendants joined on the initiative of plaintiff, to which the general doctrine applies that a plaintiff may enter a dismissal as to one or another.

Morris v. Beebe, 54 Ala. 300, is a soundly reasoned case. The statute in Alabama is substantially the same as our section 3057. After full consideration, it was there well ruled that: "Such statutes do not authorize the plaintiff to make him an original defendant, in commencing suit, nor dispense with the necessity of making the tenant a party defendant. They simply confer on the landlord a right to intervene in the suit, which he may waive or exercise at his option. If he has title extending beyond the term he has created in the tenant, which can be affected by the suit, it will be his interest to intervene, and the title and the right of possession will generally be quieted by the judgment. If he has no such title, there is no reason to justify his intervention, or for making him a party

defendant. The statute evidently contemplates that the action shall be brought only against the party in actual possession, and not against a party having a reversionary title to the possession. . . . The statute contemplates the party defendant shall have an actual possession, on which the judgment may operate. This, the landlord, who has for a term divested himself of possession, has not, and he is not a proper party defendant.''

We think the doctrine of the Alabama case is right on principle and that the decisions of this court on kindred phases of the question are in line with it. In most of the cases where the question has been approached, the landlord was the sole defendant. In such cases it was uniformly held that plaintiff could not recover. In other cases (of which Phillips v. Phillips, 107 Mo. 360; Kunze v. Evans, 129 Mo. 1, are samples) it was ruled that actual occupancy of or residence upon the *locus* is not a necessary element of possession. Those cases, however, did not deal with the relation of landlord and tenant. They were cases where the defendant resided elsewhere but farmed the land or held possession through agents, servants, etc., and where the possession was held sufficient to support ejectment. Or where no one was in actual occupancy and possession was held to follow the true title and be in the owner.

Certainly the right doctrine is that the landlord whose tenant is in possession is not a *necessary* party defendant, and it may be safely ruled that he is not a *proper* party defendant at the instance of plaintiff.

There is language used in Hunter v. Wethington, *supra,* to the effect that in a case of landlord and tenant where the tenant is in actual possession ''the action may be brought against both'' (205 Mo. l. c. 291). That ruling was somewhat *obiter* and the language used is too broad as a general rule of adjective law. The facts in the Hunter case were not dissimilar

to those dealt with in the Phillips and Kunze cases, *supra,* and what we intended to rule was that actual occupancy by residence was not necessary to support ejectment. We did not intend to rule that it was correct practice for a plaintiff to join the landlord out of possession with his tenant in possession in the first instance. In the Hunter case the landowner, although not living on the place, was in fact farming the greater portion of it—the house and undescribed garden tract were in possession of a tenant who was not sued.

(c) But under the facts of this record, although Doerr was neither a necessary nor a proper party defendant in the second count, yet it does not follow that the judgment on the second count must be reversed because of such irregularity. Reversible error is described in the written law as error "materially affecting the merits of the action." [R. S. 1899, sec. 865.] So tender was the lawmaker on that point and so sedulous was he to establish a mandatory legislative policy, that other sections of the written law are leveled at the mischief of reversing cases for errors not affecting the merits. For instance, section 659 reads: "The court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; *and no judgment shall be reversed or affected by reason of such error or defect.*" Not only must the error originally affect the merits, but the error must not be waived or cured. On either view we cannot agree that the irregularity in misjoinder of parties defendant on the second count affects the merits. This, because:

(1) In Sutton v. Casseleggi, *supra,* two tenants each holding a part of the *locus in quo* under a separate lease from a common landlord were joined with their landlord as defendants in ejectment. In that case recovery of possession was allowed to stand because no substantial injustice accrued to defendants **by**

reason of the error in the proceeding (p. 409). The trouble in that case arose over the damages, and it was held in effect that a judgment for general damages against the two tenants and the landlord could not stand since there was no mutuality between the tenants in liability. There is no such trouble in the case at bar. It is plainly not against natural justice to hold Doerr, who received the rents from Kahl and had them in pocket, responsible with him in making plaintiff whole, in case plaintiff was the owner and entitled to possession. We are unable to see in what way, then, the irregularity affects the merits of the case.

(2) But we need not let our ruling stand on that foot alone. In this case Doerr, the landlord, did not stand upon his allegation of misjoinder of parties defendant. To the contrary by his answer to the second count he put himself precisely in the attitude he would have been if he had become a party through his own motion—that is, he took the burden of the defense on his own shoulders. He interposed his title and his equities as a bulwark between plaintiff on one side, and his tenant Kahl on the other, this in order to protect the latter and to establish his own right. Not only so, but he pleaded affirmative matter and asked individual relief by way of judgment for improvements and for his outlay in purchase price. He introduced testimony tending to support his affirmative allegations. Under such circumstances he must be held to have waived the misjoinder and to have healed any error in that respect.

If the misjoinder had been apparent on the face of the petition and he had demurred for that cause (as he must in order to raise the point), certainly he would have waived it by pleading over to the merits after an adverse ruling on the demurrer. We can see no substantial difference in his present position.

That a landlord who purposely takes upon himself the burden of supporting his tenant's possession, thereby makes that possession his own and unites his fortunes with his tenant as a joint tortfeasor, and thus make himself responsible if the possession is adjudged wrongful, is supported by authority. [Abeel v. Van Gelder, 36 N. Y. 513.]

The point is ruled against defendants.

IV. At the trial of the ejectment count the decree adjudging title in plaintiff under the first count was put in evidence by plaintiff, supplemented by oral testimony. Defendants assign error in the admission of that decree. They argue that the decree was suspended by a supersedeas bond; that the cause of action on that count was pending and undetermined in this court. But we need not open up (and go into) the comedy of errors below arising from irregularities in entering two separate judgments, taking two separate appeals, etc. For some of those errors defendants are responsible, for others plaintiff must stand sponsor. If defendants had filed a motion in arrest on the first count, calling the court's attention to the fact that the judgment was premature and should be arrested until the second count was tried, that would have given the lower court a chance to correct the irregularity. If, when the second count was tried, defendants had objected to going to trial for the reason that a final judgment on the first count either exhausted the jurisdiction of the court or was tantamount to an abandonment of the second count, the court would have been given a chance to straighten out the tangle. But the defendants did nothing of the sort. They appealed both judgments and (what is more) in this court they asked us to consolidate the cases on the theory the two records constituted but one case, one judgment and one appeal. This court

took that view of it, whether rightly or not, and defendants may not be allowed to now insist on any objection to evidence based on the theory that one cause was pending here undetermined at the time the other was tried below. As defendants procured a rule here that the judgments were one judgment, in effect, they must stand on that theory.

In Stone v. Perkins, 217 Mo. 586, two judgments, one under section 650, the other in trespass for damages, entered on separate trials at separate days on separate counts of a petition, were treated as one final judgment.

But there is no merit in the objection to introducing the finding on the first count as evidence at the trial on the second. That finding and decree were self-executing. The supersedeas bond could have no effect except to stay execution for costs. The pendency of the appeal did not destroy the efficacy of the decree as evidence. [Ritter v. Dem. Press Co., 68 Mo. l. c. 461; State ex rel. v. Dillon, 96 Mo. l. c. 61; State v. Barnett, 111 Mo. App. l. c. 557 *et seq.*]

The point is ruled against defendants.

V. It is suggested that under Revised Statutes 1899, section 3072, Doerr was entitled to recover for betterments made by him in good faith on the land. By answer he set up certain disbursements made for improvements and asked reimbursement. But section 3072 and succeeding sections of the chapter on eject-ment dealing with improvements contemplate a new proceeding, independent in character, to be commenced by the unsuccessful defendant in an ejectment suit before ouster by writ of possession, to recover for improvements. Section 3073 prescribes the allegations of a petition in that behalf. Section 3074 ordains that such petitioner may have an injunction in aid of his suit to stay ouster under the ejectment judgment until the value of the improvements be as-

certained. Other sections provide for procedure in certain contingencies.

However, it has been held that the statutory scheme for recovery for improvements is not preclusive in a certain state of facts. That in a certain class of cases the recovery may be had or a set-off allowed in the ejectment suit itself. That class of cases is aptly defined in Henderson v. Langley, 76 Mo. l. c. 228, to include cases where the defendant in ejectment had purchased the land from the plaintiff or in administration proceedings or a sale under mortgage and had paid the purchaser money, entered into possession and made improvements in good faith, but failed to obtain the legal title intended to be sold and could not have specific performance. In that class of cases the owner of such legal title or his grantee having notice of such fact will not be permitted to eject such purchaser without accounting for the purchase money and paying for the improvements made. Evidently this case does not fall in that class of cases. In Tice v. Fleming, 173 Mo. l. c. 56-7, Fox, J., construed the Henderson case, *supra,* to decide that a defendant in ejectment in order to have the value of his improvements considered by way of set-off or recoupment in the ejectment proper must hold possession or occupancy by a claim of title through the plaintiff, otherwise his action for improvement must be an independent one under the statute. See Bristol v. Thompson, 204 Mo. 366.

It is insisted by plaintiff that the claim for improvements was taken into consideration by the court by way of abatement to the damages assessed. Whether that be true or not, we rule the point against defendants, for if the improvements were considered and off-set against the damages, that is the end of it. On the other hand, defendant was not entitled as a matter of law to have improvements considered in the ejectment suit proper, but must be relegated to his stat-

utory proceeding, if they were not adjusted as claimed by plaintiff.

VI. This brings us to the merits of the first count. The law of the case, we think, was well settled in Welch v. Mann, 193 Mo. 304, on a state of facts so similar in vital particulars as to make that case in point, and it should be taken with this. We have compared the record here 'with the record there in which one Welch, a purchaser of other property of plaintiff at the same execution sale under the same execution, sued her for title. In the present case there is more positive evidence tending to show the fraudulent design of plaintiff's former husband in executing the conveyance to plaintiff. But this evidence chiefly fell from the lips of plaintiff's husband who came from a distant city and went upon the stand to destroy his wife's title by an expose of his own moral turpitude. It appears sufficiently that this ex-husband has joined hands with defendant Doerr. They are shown to be ancient cronies and (literally) *hobnobbing* friends. Doerr purchased at the execution sale under an execution levied on Mann's alleged interest several years after Mann's conveyance to his wife, here assailed, was executed and put of record, and we think the chancellor would have been justified in believing that he bought at the request or suggestion of Mann himself in a speculative venture depending for ultimate success on the defeat of Mrs. Mann's title. That Mrs. Mann did not know of, consent to or participate in this fraudulent scheme, if fraudulent it was, is sufficiently shown. As appears in the Welch case, so here, she took title in pursuance of an executed antenuptial contract based on a consideration of marriage. Her good faith, however closely the facts are considered, is not successfully impeached. There was some evidence tending to show that the value of Mann's real and personal property remaining in his hands after the

conveyance to Mrs. Mann, was not of so great value as shown in the Welch case. And some that Mann was indebted to a greater extent than appeared in the Welch case. But the differences in both instances depend on the credit to be given to the evidence of Mann himself, who testified at both trials and is the chief witness now as then to show his debts and assets. It is apparent that he shaded his testimony given at the first trial to aid Doerr and injure his former wife at the second trial. When confronted by this change in his testimony his explanation is not satisfactory. The chancellor heard and saw. We neither see nor hear. We defer to him. The curious may find the substantial facts set forth in Welch v. Mann, *supra* (q. v.), and no useful purpose can be subserved by restating them. On re-examination we are satisfied with the conclusions reached in the Welch case. We are of opinion the principles of law there declared are applicable here. Hence, as we ruled then, we rule now.

Let the judgment be affirmed. It is so ordered. All concur.