JESSIE R. WOODARD v. B. F. BUSH, Receiver of MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, April 10, 1920.

1. **NEGLIGENCE:** Contributory: Action Arising in Another State: Comity. An action for negligence based upon Kansas statutes and Kansas ordinances, by which plaintiff, a citizen of Missouri, sues for damages for the death of her husband, who was also a citizen of Missouri, although his death occurred in Kansas, must be heard and determined, by the rules of comity, according to the applicable law of Kansas, and the right of plaintiff to recover must be measured by that law.

2. ———: ———: Automobile: Laws of Kansas. The laws of Kansas pertaining to contributory negligence on the part of the driver of an automobile about to cross a railroad track are much stricter than the Missouri rule. In fact, they are so rigid that it is difficult to find a Kansas authority permitting recovery in such a case where contributory negligence is pleaded as the defense.

3. ———: ———: ———: ———: Obstruction of View. By the Kansas rule, if the view of the driver of an auto-truck is obstructed, it is his duty to stop and see that no train is coming before he undertakes to cross a railroad track. By that rule it is his duty to get out of his car if such be necessary in order to determine whether or not a train is approaching before he attempts to cross the track. A box car on a switch track which obstructs his view will not relieve him from performing the duty; but if he slows up, and then attempts to cross, without looking for an approaching train, when by looking he could see it, and is struck, he is chargeable with contributory negligence.

4. ———: ———: ———: ———: ———: Stopping But Not Looking. It is not enough under the laws of Kansas that the driver of an automobile slow up before he attempts to cross a railroad track; if ris view is obstructed, it is his duty to stop and listen; and after he gets beyond the line of obstruction, it is his duty to look before attempting to cross, and if he can see if he looks, and does not look, he is guilty of contributory negligence.

5. ———: ———: ———: ———: Excessive Speed of Train. If the driver of the automobile could by looking have seen the approaching train and did not look, his contributory negligence in

crossing the track without looking cannot be excused by the fact that the speed of the train was in excess of the ordinance rate.

6. ———: ———: ———: ———: ———: **Reliance Upon Ordinance: Presumption.** It cannot be presumed that a resident of Missouri, driving an automobile in Kansas, knew the laws or ordinances of Kansas regulating the speed of trains. There is a presumption that an inhabitant of a city knows its ordinances, but the presumption goes no further.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

Reversed and remanded (*with directions*).

*Edward J. White* and *Thomas Hackney* for appellant.

(1) The demurrer to the plaintiff's evidence was properly sustained because of deceased's contributory negligence. (a) If obstructions shut off deceased's view until his truck was so close to the main line track as to be struck by passing trains, it was his duty under the Kansas law to stop his truck and ascertain whether the track was clear before attempting to cross. Wehe v. Ry. Co., 97 Kan. 794. (b) If obstructions did not shut off his view, and before reaching the main line track the deceased, by looking, could have seen the train, it was his duty to stop and look after emerging from the obstructed zone. If he failed to do so he was guilty of contributory negligence. If he did stop and look he necessarily saw the train and was guilty of contributory negligence in attempting to cross in front of same. Atkinson v. Ry. Co., 103 Kan. 446; Williams v. Ry. Co., 102 Kan. 268; Jacobs v. Ry. Co., 97 Kan. 247; Moler v. Ry. Co., 101 Kan. 280; Pritchard v. Ry. Co., 99 Kan. 600; Butts v. Ry. Co., 94 Kan. 328; Palmer v. Ry. Co., 90 Kan. 57; Corley v. Ry. Co., 90 Kan. 73; Beech v. Ry. Co., 85 Kan. 90; Adams v. Ry. Co., 93 Kan. 475; Gage v. Railroad, 91 Kan. 253; Wiley v. Ry. Co., 60 Kan. 819; Railroad v. Wheelbarger, 75 Kan. 811; Ry. Co. v. Jenkins, 74 Kan. 487; Bush v. Ry. Co., 62 Kan.

709; Railroad v. Schriber, 80 Kan. 540; Kelsey v. Railroad, 129 Mo. 372; Hugert v. Railroad, 134 Mo. 679; Hayden v. Railroad, 124 Mo. 566; Sanguinnette v. Railroad, 196 Mo. 494.

*Harry G. Kyle* for respondent; *C. A. Stratton* of counsel.

(1) When considering the ruling of the trial court upon the demurrer, this court will view the evidence in a light most favorable to the plaintiff. Stauffer v. Ry. Co., 243 Mo. 316; Hall v. Coal & Coke Co., 260 Mo. 365; Dudas v. Ry. Co., 185 Pac. 28; Johnson v. Ry. Co., 80 Kan. 463. (2) Violation of a city ordinance as to speed and warning is negligence *per se,* both in Kansas and Missouri. Hutchinson v. Ry. Co., 161 Mo. 253; Railway v. Moffatt, 56 Kan. 667; Erb v. Morasch, 8 Kan. App. 61; McClain v. Ry. Co., 89 Kan. 25; Railway v. Baker, 79 Kan. 183; Angell v. Railway Co., 97 Kan. 688; Railway Co. v. Herman, 64 Kan. 546; Railway v. Houts, 12 Kan. 328; Railway v. Kennedy, 2 Kan. App. 623. (a) It was a question of fact for the jury to determine whether the excessive speed of the train was the proximate cause of the injury. Lueders v. Ry. Co., 253 Mo. 115; Angell v. Railway, 97 Kan. 690. (b) The evidence supports the inference that deceased would have gotten safely across had not the speed been excessive. Angell v. Ry. Co., 97 Kan. 690. (3) Plaintiff made out a prima-facie case of negligence on failure to warn. (a) Whether deceased would have heard a bell, or other warning, had one been given, is a question of fact for the jury. Angell v. Ry. Co., 97 Kan. 690. (b) Timely warning by bell, or otherwise, while the deceased was still in a place of safety north of the track, would have enabled him to remain off the track and avoid the injury. (c) Plaintiff makes out a prima-facie case on the subject of listening by showing no bell was rung or whistle sounded as train approached the crossing, and the burden shifts to defendant. Weigman v. Ry. Co.,

223 Mo. 699; Angell v. Ry. Co., 97 Kan. 688. (4) There is a presumption that the deceased exercised ordinary care. Weller v. Ry. Co., 164 Mo. 198; Riska v. Ry. Co., 180 Mo. 168, syl. 1; Tanner v. Ry. Co., 172 S. W. 445; Weigman v. Ry. Co., 223 Mo. 718; Atchison, Topeka & Santa Fe Ry. Co. v. Baumgartner, 74 Kan. 148; Atchison, Topeka & Santa Fe Ry. Co. v. Hayes, 79 Kan. 544; Fike v. Ry. Co., 90 Kan. 409. (5) The deceased had a right to presume that defendant would obey the law, as declared by the city ordinance, in running its train and in giving timely warning of its approach. Hitchinson v. Ry. Co., 161 Mo. 254; Weller v. Ry. Co., 164 Mo. 199; Riska v. U. D. R. Co., 180 Mo. 168, syl. 4; Lueders v. Ry. Co., 253 Mo. 97, syl. 4; Weigman v. Ry. Co., 223 Mo. 719; Atchison, Topeka & Santa Fe Ry. Co. v. Hague, 54 Kan. 294. (6) There is a presumption that deceased did not commit suicide, or knowingly risk an apparent danger. Hatchett v. Ry. Co., 175 S. W. 878. (7) Although there was no positive evidence deceased looked, that fact raises no presumption. Riska v. U. D. R. Co., 180 Mo. 168, syl. 3. There is no evidence warranting a holding that deceased was guilty of contributory negligence as a matter of law. (a) The question of contributory negligence, if any, of the deceased, is one of fact for the jury. Weller v. Ry. Co., 164 Mo. 198; Hutchinson v. Ry. Co., 161 Mo. 254; Lueders v. Ry. Co., 253 Mo. 97; Weigman v. Ry. Co., 223 Mo. 699, syl. 2; Jackson v. Ry. Co., 189 S. W. 381; Gratiot v. Ry. Co., 116 Mo. 450; Railway Co. v. Richardson, 25 Kan. 391; Railroad v. Hinds, 56 Kan. 758; McClain v. Ry. Co., 89 Kan. 25; Angell v. Ry. Co., 97 Kan. 688; Denton v. Ry. Co., 97 Kan. 498; Smith v. Ry. Co., 91 Kan. 33; U. P. Ry. Co. v. McCulloch, 77 Kan. 844; Ry. v. Moffatt, 60 Kan. 117; Johnson v. Ry. Co., 80 Kan. 456; Railway Co. v. Hague, 54 Kan. 295. (b) Deceased was not required to anticipate defendant's negligence. Hutchinson v. Ry. Co., 161 Mo. 246; Petty v. Ry. Co., 88 Mo. 306; Eswin v. Ry. Co., 96 Mo. 290; Crumpley v. Ry. Co., 111 Mo. 152; Jennings v. Ry. Co., 112 Mo. 268; Sullivan v.

Ry. Co., 117 Mo. 214; Gratiot v. Ry. Co., 116 Mo. 450; Jackson v. Ry. Co., 189 S. W. 381. (c) It is only in exceptional cases that the court will declare the deceased guilty of contributory negligence, as a matter of law. Weigman v. Ry. Co., 223 Mo. 722; Underwood v. Ry. Co., 190 Mo. App. 407; Railroad v. Brock, 64 Kan. 90; Denton v. Ry. Co., 90 Kan. 51. (d) Contributory negligence is based on knowledge, or means of knowledge, of the danger, and utter disregard thereto. It is wholly absent in this case. C., R. I. & P. Ry. v. Hansen, 78 Kan. 278, and cases cited by appellant. (e) One suddenly placed in a perilous position by the negligence of another is not required to exercise the same judgment as if he had time for deliberation. Lueders v. Ry. Co., 253 Mo. 117; Weigman v. Ry. Co., 223 Mo. 720; Underwood v. Ry. Co., 190 Mo. App. 418.

GRAVES, J.—Action for the alleged negligent killing of Robert L. Woodard, by one of the trains operated by the defendant. Deceased was a resident of the State of Missouri, but the petition is bottomed upon certain Kansas statutes, duly pleaded, as well as certain ordinances of the city of Kansas City in the State of Kansas. The negligence charged to the defendant is (1) the failure to have a watchman at the crossing where the deceased was killed, in Kansas City, Kansas, (2) running the train at a speed greatly in excess of six miles an hour, the rate of speed duly fixed by another ordinance of said city; and (3) failure to sound the whistle or ring the bell upon the approach of said crossing.

The answer of defendant was (1) a general denial, (2) a plea of contributory negligence, (3) the following special plea of contributory negligence:

"Further answering said petition, the defendant avers that under the law of Kansas, announced by the Supreme Court of that state in the following cases [List of cases we omit] and the cases therein referred to, it was the duty of said Robert Woodard, as driver of the automobile truck to stop said truck before reaching the

said railroad tracks mentioned in the petition, and to ascertain whether there was an engine or cars coming before he drove his automobile on said track; and that said Robert Woodard negligently failed to ascertain whether the train was approaching and that his negligent conduct under said decisions precludes a recovery by the plaintiff herein.''

And (4) several ordinances of the city of Kansas City are specifically pleaded, and invoked.

Reply was a general denial, and special plea as to repeal of the ordinance set out in answer, and the rulings in Kansas on contributory negligence.

After hearing the evidence for the plaintiff (who is the widow of deceased) the trial court sustained a demurrer to the evidence in this language:

''The court instructs the jury that under the pleadings and the evidence in this case, the plaintiff is not entitled to recover, and your verdict will be for the defendant.

''The reason is that the law is well settled that the traveler, where he approaches a roadway or street crossing and does not look or listen for the approaching train and is injured, it is the result of his own negligence; and if for any reason the passageway is obstructed so he cannot see, the law makes him stop and get in a position where he can see. Otherwise, it imputes to him negligence, and for that reason this instruction is given because the evidence of the plaintiff shows he was guilty of such contributory negligence as bars recovery in this case.''

Verdict was for defendant under this instruction. Later the court sustained plaintiff's motion for a new trial, and from such order the defendant has appealed.

There is no formal assignment of error in the brief, but the sole point made in the brief is: ''The demurrer to plaintiff's evidence was properly sustained, because of deceased's contributory negligence.'' The case therefore turns upon the facts under the applicable law of Kansas.

Woodard v. Bush.

I.   The negligence of failing to have a watchman at the crossing was abandoned in the trial.   This for the reason that the ordinance relied upon by plaintiff had no application to the place of the accident.   There was ample evidence to go to the jury upon the other two grounds of negligence, so that the case here turns upon the alleged contributory negligence of the deceased. This calls first for the facts, and secondly for the applicatory law.   The accident occurred at a place where the railroad tracks cross Twelfth Street in Kansas City, Kansas.   A picture was taken just before the trial, but it gives a general idea of the location, and we incorporate it here.

Facts of Case.

The railroad runs east and west, and the street north and south, or thereabouts. On this picture will be noted the main track and a side track, between which appears a fence. There also appears a lumber yard, and an entrance thereto. This lumber yard is on the west side of 12th Street, and the train which struck deceased was coming from the west. From the south curbing of the driveway into the lumber yard to the north rail of the main track was 65 feet. It was 9 feet from the south rail of the switch track to the north rail of the main track, the switch track being north of the main track as indicated in the picture. From north rail of switch track to north rail of main track it was 14 feet. From the north rail of the main track to the picket fence is five feet, and the fence is five feet high. This fence serves to enclose the lumber yard, and this switch or spur track ran through the lumber yard. Between the switch or spur track and the stacks of lumber was a space or driveway for teams, being the south drive-way in the lumber yard. The distances mentioned supra referred to the north driveway, or the one with the gate closing it. At the time of the accident there was a pile of lath about as in the picture, which obscured the view of one in the street, if he desired to look west. To the west of 12th Street is 13th Street, at a distance of 606 feet. At a point 471 feet west of 12th Street, the main line of the railroad curves to the southwest, so that there was 471 feet of straight track to the west of 12th Street. On this switch or spur track was a box car, which was some 60 feet west of 12th Street. At one place it is spoken of as a furniture car. So that after reaching the south roadway of the lumber yard, there was nothing to obstruct the view west or southwest, save and except this five-foot picket fence, and this lone box car. Exhibit 12 shows the situation, except there seems to be more than one box car, and this exhibit we insert:

Woodard v. Bush.

Deceased, who was an employee of the American Sash & Door Company, was perfectly familiar with the situation of this crossing. He had delivered goods to this lumber yard two or three times per week for at least four years prior to the accident. This morning he delivered some goods to the lumber yard for his company. He, as was usual, brought the good upon a two-ton truck, as stated in one place, and a heavy truck, in other places of the evidence. He was in the cab of the truck, which was enclosed, but had isinglass openings to the sides, and a wind-shield front. After delivering his goods to the lumber yard, he started south on 12th Street from this north driveway, toward the crossing. It was down grade until he struck the switch or spur track, where it was level until the tracks were crossed. One witness says that deceased stopped his truck about 9 feet from the main track, and then started up slowly. This would make the stop on the switch track, as it is 9 feet from south rail of switch track to north rail of main track. Another says he slowed up his truck and was running slowly. The witness who says he stopped, was opposite him on the east side of 12th Street, and had seen and heard the approaching train. When he saw deceased start to cross, this witness called to him that the train was coming, and deceased replied "it is too late now" and as he got on to the main track, the engine struck the truck with the instant death of plaintiff's husband, as the result. The weight of the evidence shows the speed of the train to have been about 15 miles per hour, although one witness puts it as high as 30 miles. No witness testifies that plaintiff looked otherwise than straight ahead. One witness says that he was looking straight ahead. There was no stop between the switch track and the main track, although there was a place there whereat the train would have been visible for 471 feet. By one witness the smoke of the train was seen before it reached this straight track of 471 feet. Sitting in the truck the deceased could look over the top of the picket fence, and see westward, so that after he passed the lumber piles, and reached the

south driveway of the lumber yard, the box car was his only obstruction. And for the nine feet between the switch and main track there was no obstruction. On these facts the trial court directed the jury to find for the defendant on account of the contributory negligence of the deceased. The verdict rendered under this instruction the trial court set aside, and granted a new trial. This order is the alleged error, and the only one in the record and briefs.

I. The cause of action arises in Kansas. The suit is based upon Kansas statutes and Kansas ordinances. The plaintiff (as was her deceased husband) is a resident of Missouri, and invokes the jurisdiction of our courts to enforce a right under Kansas law. By comity we hear and determine such actions, but the Kansas law is the applicable law, and the existence of the right to recover must be measured by the laws of our sister state and not by our laws. The laws of that state were duly pleaded by both sides. In such case LAMM, J., in Newlin v. Railroad, 222 Mo. l. c. 391, has well measured the duty of Missouri courts. He says:

*County.*

"Again, this is an action strictly on the laws of the State of Kansas for damages for death by a wrongful act, which statutes, under our own liberal laws, are enforceable in this State on the foot of comity. [R. S. 1899, sec. 547; Laws 1905, p. 95; Lee v. Railroad, 195 Mo. 400; McGinnis v. Foundry Co., 174 Mo. 225; Root v. Railroad, 195 Mo. 348.] In this connection we observe: Our statutes (Sec. 547, Laws of 1905, p. 95, supra), opening the doors of our courts to causes of action accruing under laws of our sister state, are legislative declarations of comity. Comity, in a legal sense, is complaisance, courtesy, the granting of a privilege, not of right, but of good will. [Black's L. Dict.—tit. "Comity."] Now, in reason, courtesy in that behalf has its useful limitations —it may not run riot, it goes circumspectly. It must be courtesy in fact as well as name. Some such limitations are: (1) No case under the *lex loci,* then no case under

the *lex fori;* and the supplement, viz.: a case under the *lex loci* then one under the *lex fori* (possibly barring actions on status strictly penal); (2) in administering the substantive laws of a sister state we administer *them,* not our own; and (3) we should not administer them either more or less blandly than do our sister's courts. This in order, on the one hand, to not refuse jurisdiction by a too sour or cold complexion or to repeal it by corroding our sister's law; or, on the other hand, to not toll, entice and coax jurisdiction from our sister's courts —thereby (under a mask of courtesy) draining jurisdiction away from them by an enlarged and alluring interpretation in our own.''

See, also, Yost v. Railroad, 245 Mo. l. c. 234, and the cases there cited. As in the Yost, so in this case, the pleaded statutes and decisions of Kansas were placed in evidence. These cover the doctrines of negligence and contributory negligence, and to these we must determine liability or no liability in the instant case. Of these, and the pertinent facts next.

III.  Going to the Kansas rule as to contributory negligence in the case of automobile crossing a railroad track, we find several phases to the rule. That such rule is much stricter and more rigid than ours **Contributory Negligence.** is apparent from the later cases from that court. In fact it is a difficult matter to find Kansas authority for recovery in such a case, so rigid is their rule as to contributory negligence.

In the instant case it is contended by plaintiff that the box car obstructed the view until after the auto-truck got to and passed the switch or spur track. If this be true the plaintiff is impaled under the Kansas rule. It is true that the evidence tends to show that deceased did stop before he crossed the main track, but this branch of the case we take later.

If the plaintiffs' view was obstructed, then, under the Kansas rule it was his duty to stop and see that no train was coming. Under that rule he even should have gotten out of his car, if such was necessary to determine

the approach of the train. This on the theory that his view was obstructed. In Wehe v. Railway Co., 97 Kan. 1. c. 797, after reviewing many previous cases, it is said:

"The driver of an automobile must exercise care for himself, and because of the character of the machine that he is driving—a heavy steel structure, dangerous to others—he must exercise some degree of care for the safety of those rightfully traveling on a railroad train when he is about to cross the track. His machine is easy of control. It will stand where he leaves it. It will not get frightened. If by his negligence he should derail the train he would be responsible to passengers injured, even though the men in charge of the train were guilty of negligence, if the rule applied to a passenger in an automobile when the driver of the automobile is guilty of negligence is applied to passengers on a train. Under the circumstances surrounding this case, the plaintiff, being unable to see the engine and cars on the track until his machine was in a place of danger, was as a matter of law required to stop his automobile and see whether there was an engine or cars coming before he drove his automobile on the defendant's track. The judgment is reversed and judgment is directed for the defendant.''

To like effect is Williams v. Railway, 102 Kan. 1. c. 271, whereat it is said:

"It is generally held that disobedience of a city speed ordinance is negligence *per se;* but to entitle one injured or damaged through the breach of the ordinance to recover judgment thereon he must himself be free from fault or negligence, and the latter point is the controlling question in this case. Was the plaintiff free from negligence? The embankment and weeds obscured his vision as he approached the crossing, yet he did not stop his automobile to determine whether he might cross in safety. At fifteen feet from the crossing nothing prevented him from seeing the approaching car. Even then, if plaintiff had been taking proper precaution for his own safety, he could have stopped his automobile before it reached the track, for its speed was only four or five

miles an hour. The rule in this State is that when one is about to cross a railroad track, and cannot otherwise assure himself that he may safely do so, he must stop, look and listen. [Bunton v. Railway Co., 100 Kan. 165, 168, 163 Pac. 801; Burzio v. Railway Co., post, p. 287, just decided, and citations therein.] Such, indeed, was the general rule in the cases of pedestrians and horse-drawn vehicles before the coming of automobiles. [A., T. & S. F. R. Co. v. Townsend, 39 Kan. 115, 17 Pac. 804; Railroad Co. v. Willey, 60 Kan. 819, 58 Pac. 472.] With the coming of the automobile, a highly scientific invention and easy of control, and with its great weight and steel construction and its consequent capacity for imperiling the traveling public in case of collision, the courts have been compelled to develop a more rigid rule, or rather to insist more rigidly upon the application of the old rule, touching the duty of self-preservation imposed on those about to cross a railway track in such a vehicle. [Wehe v. Railway Co., 97 Kan. 794, 156 Pac. 742; Jacobs v. Railway Co., 97 Kan. 247, 154 Pac. 1023; Cathcart v. Oregon-Washington R. & Nav. Co. (Ore.), 168 Pac. 308.] In the Wehe case the view of the driver of the automobile was shut off by a stone wall and buildings. The court said: 'The driver of an automobile cannot recover damages for injury to himself and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming.' Notwithstanding the defendant's disobedience of the speed ordinance of the city and its possible negligence in permitting weeds to grow on the embankment along its right of way, the special findings show that the plaintiff was guilty of such contributory negligence as bars his right of recovery, and the defendant was entitled to judgment on the special findings of the jury.''

These cases cover the rule in cases where the view is obstructed, and the latter case also covers that phase of the rule as to the duty of deceased after he passed the obstruction. But this phase of the rule is more aptly ruled in Atkinson v. Railway Co., 103 Kan. l. c. 446, whereat it is said:

"The petition alleged that as the plaintiff approached the track his view was obstructed from the time he was within fifty yards of it until the distance was reduced to about thirty feet. The jury found that the defendants' employees were negligent in running too fast and in failing to give proper warning. They also undertook to acquit the plaintiff of any negligence, but they found specifically that after he had reached a point twenty feet from the track there was nothing to prevent his seeing the approaching motor car if he had looked. Inasmuch as from the time the plaintiff was within 150 feet of the railroad until he was within fifty feet of it he was prevented by obstructions from seeing whether the track was clear, it was his duty to look for an approaching car after emerging from this obstructed zone and before attempting to cross. [Beech v. Railway Co., 85 Kan. 90, 116 Pac. 213.] If he failed to do so, he was guilty of contributory negligence as a matter of law and thereby precluded from recovery. If he did look, he necessarily saw the motor car coming, and his failure to stop was an equally effective barrier. The rule is too familiar to require the additional citation of authorities. The plaintiff testified that when he was ten or eleven feet from the first rail he almost stopped, and looked as far down the track as he could see on account of the obstructions and saw nothing. The jury evidently did not give credit to this, for the finding already referred to negatives the existence of any obstructions to vision between him and the motor car after he was within twenty feet of the track. That the plaintiff had abundant opportunity to see the motor car in time to prevent the collision was emphasized by other findings, establishing these facts: When the plaintiff was 30 feet from the

track his view of the approaching motor car was obstructed by freight cars on another track, but he could see along the track for a distance of 210 feet, a range which obviously would increase as he advanced. The motor car as it came around a curve was going 15 or 16 miles an hour. At a distance of 90 feet from the point of accident the brakes were applied. At a distance of 40 feet the speed had been reduced to 9 or 10 miles. It is suggested that the ordinary rule does not apply, because of the character of the motor car and the car it was pushing, in that they were not nearly so high as a locomotive, passenger car or box car. We think the distance is without effect here. The plaintiff was bound to keep an outlook for whatever vehicle might be approaching on the track, and the cars were not low enough to prevent their being seen, for the jury specifically found that at 20 feet there was nothing to obstruct the view of them. The judgment is reversed and the cause remanded with directions to render judgment for the defendants.''

So that if it be conceded that the view of deceased was obstructed until he got his truck far enough to avoid the obstruction of the box car, it then became his duty to stop, look and listen for a train before entering upon the main track. When it is considered that he was in the street (25 feet from the curb to curb, with parkings and sidewalks between the curb and the property line) and that this box car was 60 feet west of the street, it is clear that he had a clear view to the west and southwest for more than 15 feet. As said in these cases had he looked he could have seen the approaching car. The track was straight for 471 feet and then curved to the southwest, and the evidence indicates that one could see to 13th Street, a distance of 606 feet. The rule compelled this deceased to look after he had gotten beyond the obstructions. Had he looked he could have seen. All agree the picket fence would not obstruct his view, seated as he was in the truck. But it is urged that he stopped or nearly stopped before going on the main track. This may be true or it may not be true, but we

take it as true for the purposes of the case. If he stopped he did not look, because he would have had a plain view of the on-coming train. One of his witnesses saw the smoke of the train before it got to 13th Street, 606 feet away. What this witness saw, deceased could have seen. Under the Kansas rule the deceased was guilty of such contributory negligence as to preclude a recovery by plaintiff.

IV. But it is urged that deceased had a right to rely upon the defendant running its train at the rate of six miles an hour, and but for the speed he would not have been killed. There are two answers to this suggestion. First, had he looked, he could have seen the speed of the train, just as his non-expert witnesses saw such speed. These witnesses saw and could estimate the speed, and what they saw the deceased could have seen had he looked. If as a fact deceased stopped or checked up his truck, it might have been for some other reason than that of looking for a train. No witness saw him look either to the west or the east. It is, however, sufficient to say that had he looked he could have seen the train and its speed.

The plaintiff in this case cannot rely upon the presumption that deceased knew the ordinance rate of speed. He was a resident of Missouri, and was not presumed to know Kansas law or Kansas ordinances. There is no proof that deceased knew of this Kansas ordinance fixing the rate of speed at six miles per hour, and there is no presumption that a Missourian knows the ordinances and laws of a sister state. [Bolinger v. Beacham, 81 Kan. 1. c. 751.]

There is a presumption that an inhabitant of a city knows its ordinances, but the presumption does not go further. We have so ruled in Inhabitants of Palmyra v. Morton, 25 Mo. 1. c. 597, and Boonville ex rel. v. Stephens, 238 Mo. 1. c. 357, but the rule goes no further. On this question our rule accords with that of Kansas. So that in this case there is no presumption that deceased knew the ordinance rate of speed, and there is no

proof that he knew it. Not knowing the ordinance rate of speed, he could not rely upon it in the movement of his truck toward the main track of defendants' railroad. This is more by way of passing, because if deceased looked, he could have seen just what his witnesses saw, and it was his duty to stop, look and listen under the facts of this case, after he had passed all obstructions. Had he done so the physical and other facts show he would have seen and heard the on-rushing train. It follows that the judgment should be reversed, and the cause remanded with directions to reinstate the verdict of the defendant. All concur; *Blair, P. J.*, in paragraphs 1, 2 and 3 and the result.