LLOYD G. FERRIS, RESPONDENT, v. MISSOURI PACIFIC RAILROAD CO., APPELLANT.—48 S. W. (2d) 138.

Kansas City Court of Appeals.   February 1, 1932.

*Cleary & Barnett, John R. James* and *Sloane Turgeon* for respondent.

*Thos. J. Cole, C. W. Hight* and *D. C. Chastain* for appellant.

CAMPBELL, C.—Plaintiff brought suit to recover damages to his person and property, alleged to have been sustained in consequence of the negligence of the defendant. He had judgment. Defendant appeals.

It is alleged in the petition that defendant operated a line of railroad ''over and across a highway known as highway No. 7, Miami county, Kansas, and over and across the public road running in an

east and west direction and intersecting said highway No. 7 at or near the point where said highway No. 7 is crossed by the railroad tracks of defendant; that both of said crossings are outside of the city limits of Paola, Kansas, and are not in any city or village;'' that the crossing at which the accident happened was an unusually dangerous one, and therefore it was the duty of defendant to exercise a higher degree of care in the operation of trains at that point than it was bound to exercise in the operation of trains at other crossings.

The ground of negligence upon which the cause was submitted to the jury was a failure to sound alarms as required by the law of Kansas.

The law of Kansas applicable to crossing accidents is also pleaded.

The answer is a general denial, plea of contributory negligence, and the law of Kansas.

Plaintiff testified that on the day of the accident he drove his truck south upon highway No. 7; that when he approached the railroad crossing he stopped, looked and listened for an on-coming train; that he did not see or hear a train; that he then proceeded across the track, turned west into a side road and approached what is known in the record as the second crossing; that he stopped ten to fifteen feet from that crossing, leaned out of the window and looked for an approaching train; that he could see along the track a distance of 800 or 900 feet, ''maybe one thousand, I don't know exactly;'' that after looking out of the cab window he put the truck in gear and proceeded on his way; that ''just as I got on the track I heard the whistle and I looked up and it hit me.''

On cross-examination he testified that the accident occurred about ten o'clock in the morning; that he was familiar with the road and crossing and knew that two fast trains were due about that time; that he stopped ten or twelve feet from the crossing, leaned out of the widow on the right side of the cab of his truck. ''Q. And you tell the jury that you looked up the track 900 feet and saw no train coming? A. Yes, sir. . . . I figured if there was no train in sight I could get by;'' that thereupon he returned to the wheel, put the truck in low gear and without again looking, started toward the crossing, traveling at a speed of two to three miles an hour; that as he came onto the crossing his truck was ''turned west and was going west,'' and that he was ''square with the engine.''

There was evidence that the train which struck plaintiff was traveling at a speed of sixty miles an hour and that the operatives thereof were negligent in failing to sound alarms as required by the law of Kansas.

Defendant insists that under the law of Kansas plaintiff was guilty of contributory negligence, as a matter of law, and hence verdict should have been directed in its behalf.

We are cited to many decisions of the Supreme Court of Kansas applicable to crossing accidents. It would add nothing to this opinion to discuss or analyze them because the Supreme Court of this State has recently spoken on that subject and the opinions of that high court are conclusive on us.

In the case of Woodward v. Bush, 282 Mo. 163, 220 S. W. 839, it is said:

"Going to the Kansas rule as to contributory negligence in the case of automobile crossing a railroad track, we find several phases to the rule. That such rule is much stricter and more rigid than ours is apparent from the later cases from that court. In fact it is a difficult matter to find Kansas authority for recovery in such a case, so rigid is their rule as to contributory negligence.

"In the instant case it is contended by plaintiff that the box car obstructed the view until after the auto-truck got to and passed the switch or spur track. If this be true the plaintiff is impaled under the Kansas rule. It is true that the evidence tends to show that deceased did stop before he crossed the main track, but this branch of the case we take later.

"If the plaintiffs' view was obstructed, then, under the Kansas rule it was his duty to stop and see that no train was coming. Under that rule he even should have gotten out of his car, if such was necessary to determine the approach of the train. This on the theory that his view was obstructed."

In the case of Sing v. Railway Company, 30 S. W. (2d) 37, the court said:

"Under the Kansas decisions, where the situation and the exercise of ordinary care demand it, it is not only necessary that the traveler, on arriving at a crossing, stop, look, and listen, but if it will add to his safety, he must alight from his vehicle and proceed to a superior position to survey the tracks for an approaching train."

Plaintiff is bound by the allegation that the crossing was an unusually dangerous one. He was familiar with the crossing and, therefore, knew the extraordinary danger which confronted him in crossing over it. It was his duty to exercise a degree of care commensurate with the situation. He stopped ten or twelve feet from the crossing, got out from under the wheel, looked out of the window on the right side of the truck, returned to the wheel, put the car in low gear and started forward, and without further precaution proceeded toward the track traveling at a speed of two to three miles an hour. He knew that two fast trains were due, and with that knowledge he chose to "figure if there was no train in sight I could get by."

It is clear from plaintiff's evidence that he could have seen the train sooner than he did see it: "Just as I got on the track I heard the whistle and I looked up and it hit me." He gave no reason for not "looking up" before he was aroused by the whistle. It must not be overlooked that plaintiff proceeded in the trial court upon the theory that the crossing was an unusually dangerous one. The danger, however, which beset him arose not from the location of the road or crossing but from the fact that he was traveling in a truck, the cab of which was so constructed that his view of the track was obstructed. It cannot be claimed that if, after plaintiff stopped, he had proceeded "to a superior position to survey the tracks for an approaching train," the accident would have happened. To hold that plaintiff's personal testimony did not show that he was guilty of contributory negligence would be to bring ourselves in conflict with the holding in the Woodward case, and the holding in the Sing case.

The judgment is reversed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed. All concur.