(No. 20529.—

HARRY DEE, Admr., Appellee, *vs.* THE CITY OF PERU, Appellant.

*Opinion filed February 18, 1931.*

CHARLES W. HELMIG, and BUTTERS & BUTTERS, for appellant.

RICHOLSON, ARMSTRONG & O'MEARA, (JOHN H. ARMSTRONG, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on a certificate of importance of the Appellate Court for the Second District. Appellant seeks to reverse the judgment of that court affirming the judgment of the circuit court of LaSalle county in an action for damages for the death of appellee's intestate, Joseph G. Dee, caused by drowning when the automobile in which he was riding as a passenger was driven off a bridge into the Illinois river at Peru through an opening occasioned by the turning of the bridge draw-span. The declaration charges negligence on the part of the appellant city in failing to construct proper gates or barriers and to give sufficient warning of the dangers of that place. At the close of the plaintiff's case, and again at the close of all the evidence, appellant moved for an instructed verdict in its behalf, which was denied. The jury returned a verdict for appellee in the sum of $750 and judgment was entered thereon. The Appellate Court affirmed that judgment.

The Illinois river at Peru flows almost east and west. Peru is an incorporated city situated on the north bank of

the river. The bridge extends almost north and south across the river and has a draw-span 320 feet in length. This span swings on a pier built in the center of the river. When the draw-span is fully turned it extends up and down the river. The open space between the north end of the south approach of the bridge and the south side of the center pier is 152 feet in width. This south part of the bridge is about 75 feet in length and is covered with a concrete floor or roadway. At a point about midway of this approach there was on the date of the accident a gate or barrier constructed of yellow pine lumber two inches thick by six inches wide, with diagonal braces of like dimensions and with uprights four inches by four inches at either end. The gate was over four feet above the floor of the approach. It was hung by hinges to the iron framework on the east side of the bridge and when closed was fastened to the framework of the west side of the bridge by a hook made of half-inch iron. Extending south from this part of the bridge is a gravel-surfaced road along a dike thrown up in the low land south of the river. This road extends straight with the line of the bridge from the approach a distance of approximately 100 feet and then turns slightly to the southwest and continues more than a quarter of a mile, where it again turns to the left and continues south. On the west side of this road, near the turn in it nearest the bridge, are some out-buildings and a house occupied by the bridge-tender and his family. It is undisputed that on approaching the bridge from the south the gate or barrier, when closed, is fully visible for a distance of more than 100 feet. About 7:30 on the morning of June 21, 1927, appellee's intestate, while riding with one George Schuets in a small automobile driven by the latter, crossed this bridge going south from Peru, and about 9:00 o'clock on that same morning returned in the direction of Peru in the same car. When they returned, the draw-span of the bridge had been opened in order to make repairs on the

turning mechanism and the gate or barrier was swung across the approach and fastened in the usual manner, thus closing the approach and bridge to travel. Schuets drove the automobile up to and over the south portion of the bridge, through the barrier and into the river and appellee's intestate was drowned. Schuets succeeded in disengaging himself from the car and was taken into a boat by Otto Koehler, who was then on the river at that point.

Appellee's evidence of the occurrence consisted entirely of the testimony of Schuets, who stated that at the time of the accident he was driving at a rate of speed from thirty to thirty-five miles per hour and that he did not see the barrier across the approach until he was 20 feet from it. The evidence shows without dispute that after crashing through the barrier the car landed in the river on its four wheels at a point more than 100 feet north of the north end of the approach. The witness Koehler testified that it struck the river at a point about 20 feet from the center draw or pier of the bridge, which would make the distance between the point where it went into the water and the north end of the south approach of the bridge about 132 feet. He testified that the car did not come down on either side or end but on all four wheels.

Schuets testified that he knew this bridge and knew that it had a draw-span; that as he and appellee's intestate were returning to Peru he was driving and that he was looking straight ahead at the road. Certain photographs offered in evidence were shown to him and he testified that they showed the situation as he knew it. He stated that he was just about on the south end of the approach to the bridge when he first saw the barrier and that he did not see that the span of the bridge was open until he was going through the barrier and off the bridge and that no one called his attention to the condition of the draw-span up to that time. He stated that he was watching the road; that it was broad daylight and the sun was shining; that he got onto the ap-

proach before he put on his brakes; that when he put on the brakes the car slowed down a little, and that he was about two car lengths on the approach before he saw that the gate was shut. On cross-examination he was asked why he did not see the gate before, and he answered, "I did not see it." Question: "You were not looking for it, were you?" Answer: "Why should I be?" He testified that his eyesight was good and that he was not dazed but that he did not see the gate. He also testified that he did not see the bridge-tender or his wife standing about 100 feet south of the bridge and waving for them to stop. Asked why he did not see them, he replied that he did not see them.

The proof concerning the photographs showed the measurements of distance from the point at which the camera was placed to the south approach of the bridge and to the gate. One of the photographs introduced in evidence was shown to have been taken 110 feet from the barrier and disclosed the entire gate in the picture, the evidence showing that the camera was placed in the roadway when the picture was taken. The evidence shows that the span of the bridge, when swung, can be seen for a distance of nearly three-quarters of a mile south of the bridge. There is no evidence that the sight of either Schuets or appellee's intestate was in any way impaired. The undisputed evidence shows that the car traveled at least 90 feet after the gate came into full view to the point where Schuets stated he saw it. The only evidence of due care on the part of appellee's intestate was the statement of Schuets that he did not see the gate until he got within about 20 feet of it and that he was going thirty to thirty-five miles per hour. That the gate was across the bridge and was visible for at least 110 feet south of the approach is not disputed and is conclusively proved by the record. Two witnesses who were working on the pier in the middle of the river repairing the turning device of the bridge, testified that the bridge-tender and his wife were on the road where they could see cars approach

from the south. Louisa Meyer, wife of the bridge-tender, testified that she and her husband were watching this road and heard and saw Schuets' car coming nearly three-quarters of a mile down the road; that it was coming very fast and making a loud noise; that they both stood in the middle of the road and waved for them to stop until it got close to them and they stepped out of its path and continued to wave, but that it went past them at about fifty or sixty miles per hour, crashed through the gate, over the approach and into the river. Meyer died before the trial. The only evidence disputing this testimony as to the conditions existing is that of Schuets, who stated that he did not see the bridge-tender and his wife and did not see the gate until within 20 feet of it.

Appellant's first assignment of error presents the question whether there is in the record sufficient evidence of due care on the part of appellee's intestate to support the verdict and judgment. The declaration contains no charge of willful or wanton conduct on the part of appellant. Appellee therefore had the burden of affirmatively showing that deceased was in the exercise of due care and caution for his own safety at the time of the accident which resulted in his death, or, in the absence of direct testimony, showing such care that reasonable inferences of such due care and caution might be drawn from the circumstances disclosed by the evidence. If the negligence of the deceased contributed to the injury appellee cannot recover. (*Wilson* v. *Illinois Central Railroad Co.* 210 Ill. 603.) The declaration charges that the place of the accident was a dangerous place. It has long been the rule in this State that it is the duty of persons about to cross a dangerous place to approach it with care commensurate with the known danger, and when one on a public highway fails to use ordinary precaution while driving over a known dangerous place, such conduct is by the general knowledge and experience of mankind condemned as negligence. (*Greenwald* v. *Baltimore*

*and Ohio Railroad Co.* 332 Ill. 627; *Graham v. Hagmann,* 270 id. 252; *Lake Shore and Michigan Southern Railroad Co. v. Hart,* 87 id. 529; *Chicago, Burlington and Quincy Railroad Co. v. Damerell,* 81 id. 450; *Toledo, Wabash and Western Railway Co. v. Jones,* 76 id. 311.) One having an unobstructed view of a dangerous crossing on a highway is not justified in closing his eyes or failing to look in reliance upon the assumption that that highway is free and open to travel. The law will not tolerate the absurdity of permitting one to testify that he looked and did not see the danger when the view was unobstructed and where, if he had properly exercised his sight, he would have seen it. (*Greenwald v. Baltimore and Ohio Railroad Co. supra; Schlauder v. Chicago and Southern Traction Co.* 253 Ill. 154.) It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger. (*Pienta v. Chicago City Railway Co.* 284 Ill. 246; *Flynn v. Chicago City Railway Co.* 250 id. 460; *Hoag v. New York Central and Hudson Railway Co.* 111 N. Y. 199.) When there is any evidence before the jury which, taken with its reasonable inferences in its aspect most favorable to the plaintiff, tends to show the use of due care, the question of due care is one for the jury. Whether there is any such evidence is a question of law. (*Pienta v. Chicago City Railway Co. supra.*) In determining such question this court can examine the record only to determine whether there is any evidence so tending to support the cause of action. (*Hinchliffe v. Wenig Teaming Co.* 274 Ill. 417; *Reiter v. Standard Scale Co.* 237 id. 374; *Libby, McNeill & Libby v. Cook,* 222 id. 206.) Applying this rule to the record before us, it seems clear that Schuets and the deceased had an unobstructed view of the approach of the bridge and the obstruction across the roadway for a dis-

tance of at least 110 feet. It is shown by expert testimony, and is not disputed, that a car of the type driven by Schuets, when going at the rate of thirty-five miles per hour, may be stopped by application of the brakes in a distance of fifty to fifty-five feet, and we conclude, therefore, that, with the clear vision of the barrier across this bridge, a distance of 110 feet was ample to stop the car going at that rate before the gate was reached.

It is argued by counsel for appellee that the record shows that the gate or barrier was so weather-beaten that it could not be seen "until you were right upon it." The evidence shows that six years prior to the accident this gate was painted white; that it was somewhat weather-beaten but that the sun was shining brightly on this day and that the accident occurred approximately at nine o'clock, at which time the sun would be shining directly on this barrier. There is no evidence in the record that the gate could not be seen until close upon it. There was no obstruction or turn in the road for a distance of at least 110 feet from this barrier. There is no evidence that the deceased called Schuets' attention to the danger confronting them. Schuets testified that he was looking straight ahead but that he did not see the gate or the bridge-tenders. Under the rule hereinbefore discussed, such statement under those conditions cannot constitute evidence of due care. The burden was upon appellee to show that when deceased met his death he was in the exercise of ordinary care. That burden was not maintained in this case. The testimony of the witnesses who were repairing the bridge was that they heard the car coming for a substantial distance down the road south of the bridge and gave as their judgment that it was coming at the rate of fifty miles per hour. The evidence of this great speed is further corrobated by the undisputed fact that the car, when it left the south approach of the bridge, vaulted more than 100 feet across the open space and struck the river in practically the position in

44

which it left the approach of the bridge. The law does not afford to one who so exposes himself to danger the privilege of recovering damages for an injury arising from his actions, which injury might have been avoided by the use of reasonable care for his own safety.

The trial court erred in not instructing the jury to return a verdict for the defendant and the Appellate Court erred in not reversing the judgment of the circuit court.

Other errors are assigned and argued in the briefs, but as our conclusions on this assignment of error dispose of the case here it is not necessary to consider other errors assigned.

The judgments of the Appellate and circuit courts are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*