Catherine Moore, Administratrix of the Estate of George B. Moore, Deceased, Appellee, v. Illinois Power and Light Corporation, Appellant.

Gen. No. 9,067.

Opinion filed September 3, 1936. Rehearing denied October 6, 1936.

E. BENTLEY HAMILTON, of Peoria, for appellant.

CASSIDY & KNOBLOCK, of Peoria, for appellee.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

This was an action under the statute by appellee as administratrix of the estate of George B. Moore, deceased, for his wrongful death, alleged to have been caused by the negligence of appellant. The deceased was a laborer 34 years of age. He was struck and killed by one of appellant's street cars at about 30 minutes past midnight on the night of May 1, 1934. He left surviving a wife, Julia Moore, an inmate of an asylum, and three young children. The trial resulted in a verdict in favor of appellee, plaintiff below, in the full statutory amount of $10,000. Judgment was entered upon the verdict and this appeal results.

The accident occurred at a point on Adams street in the city of Peoria, about 75 feet north of the intersection of this street with Evans street. Adams street runs north and south. Appellant has two sets of car tracks upon this street. The east set of tracks is for the northbound cars, and the west set of tracks is for the southbound cars. The accident occurred upon the east set of tracks. At the northeast corner of the intersection of Adams and Evans streets is located a tavern. The deceased was first seen at this tavern at about 8 o'clock on the night of May 1st. The accident happened at 12:30 that night.

The only eyewitness to the accident who testified for plaintiff was one Clarence Randall. He was employed at the same place where the deceased worked. On the night in question this witness saw and talked to the deceased at this tavern. Immediately prior to the accident, the witness saw the deceased sitting on a bench talking to another man. At about 12:30 the deceased arose from the bench upon which he was sitting, and stated to the witness Randall that he was going home. He lived about 11 or 12 blocks from this place. At this time, the witness saw the street car in question approaching the intersection of Adams and Evans streets from the south. He states he paid no particular attention to the street car at this time. He further

states that the street intersection was illuminated by an electric street light. He saw the deceased proceed north upon Adams street to a place where he left the walk and started to cross the street in a diagonal manner, going in a northwest direction. The witness states that at this time the street car was passing through the intersection and was in plain view and making the ordinary noise of a street car. He says that he had talked to the deceased at numerous times, and that so far as his observation went, the deceased was possessed of normal hearing. He further states that as the deceased started to cross the street, he saw him look south on Adams street toward the direction from which the street car was approaching; that the deceased, after he left the east curb of Adams street, walked rapidly. The attention of the witness was arrested as he saw the deceased walking into the path of the car. He watched the deceased until he saw him proceed to a place near enough to the east rail of the east set of tracks to be struck by the northeast corner of the front end of the street car. The deceased was knocked to the pavement. He was taken to the hospital, where he died within a short time.

The evidence is undisputed that Adams street was a paved street, level and unobstructed to the view; that a street light was burning at the intersection in question; that the street car was brilliantly lighted by electric lights both on the inside and on the outside; and equipped with a headlight, which was burning. The testimony of the plaintiff's witness Randall discloses that at the time he was talking with the deceased, after he had arisen from the bench upon which he was seated and stated his intention to go home, that this witness then saw the street car entering the intersection of the two streets; that he saw the deceased look south on Adams street toward the approaching car, and thereafter turn and proceed north along Adams street for a distance, when he stepped from the curb into the street,

taking a diagonal course across the street in a north-westerly direction, and thus proceeded until he was struck by the street car. It is undisputed that the street at this time of night was deserted and no traffic passing thereon except the street car in question.

The deceased was a resident of the city of Peoria. He was acquainted with his surroundings. He had been at the place of the intersection of these two streets on the night in question. It is the duty of a person approaching a place of danger, to do so cautiously and with a proper degree of care for his own safety. The degree of care required is to be determined by the danger to which the individual is knowingly exposed. *Illinois Cent. R. Co. v. Batson,* 81 Ill. App. 142; *Loettker v. Chicago City Ry. Co.,* 150 Ill. App. 69; *Price v. Chicago & E. I. Ry. Co.,* 270 Ill. App. 111, 116; *Dee v. City of Peru,* 343 Ill. 36, 41. While the question of ordinary care is, in the first instance, a question of fact for the jury, yet in this case there is no conflict of testimony that the street in question was paved with brick; was level and unobstructed to the view; that it had two sets of street car tracks down the center; that the street light at the intersection was burning; that the street car was brilliantly lighted; that the witness Randall who was talking to the deceased just before he started to cross the street saw the street car entering the intersection; and his testimony on behalf of plaintiff discloses that the deceased looked in the direction of the approaching street car before he started to cross the street.

One having an unobstructed view of a street railway is not justified in going upon the same at points between street intersections, without using reasonable diligence to ascertain if it is safe to cross the same at such time and place. The law will not permit one under such circumstances to claim that he looked and did not see the danger, when the view was unobstructed, and where if he had properly exercised his sight, he would have

seen it. *Dee v. City of Peru, supra,* p. 42; *Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627, 632; *Bushu v. Cordera,* 257 Ill. App. 234, 239. *Price v. Chicago E. & I. Ry. Co., supra.* In this connection it has been said that, "An instruction must not limit the exercise of care and caution of the party injured to the time when he was in danger, regardless of his conduct in putting himself in that position." *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544, 551. The question of due care, as above stated, is in the first instance a question for the jury, when there is any evidence given on the trial, which, with all legitimate inferences that may be legally and justifiably drawn therefrom, tends to show the use of due care; but where the evidence with all legitimate inferences that may be legally and justifiably drawn therefrom does not tend to show due care, then a verdict for plaintiff should not be permitted to stand. The circumstances in this case are quite similar to those in the case of *Micca v. Alton R. Co.,* 281 Ill. App. 216.

We are of the opinion that the verdict is against the manifest weight of the evidence. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*