Sarah Ann Ames and Jack A. Ames, Appellants, v. Terminal Railroad Association of St. Louis and East St. Louis City Lines, Appellees.

**Term No. 47M7.**

Opinion filed September 15, 1947. Released for publication October 16, 1947.

LOUIS BEASLEY, of East St. Louis, for appellants.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and NORMAN J. GUNDLACH, all of East St. Louis, for certain appellee.

DAN McGLYNN, of East St. Louis, for certain other appellee; CHARLES M. WHEALON, of counsel.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

This is a suit for personal injuries by Sarah Ann Ames and Jack A. Ames, her husband, plaintiffs appellants herein, against Terminal Railroad Association of St. Louis and East St. Louis City Lines, both corporations, defendants appellees. The trial court directed a verdict in favor of the defendants at the close of the plaintiffs' evidence and dismissed plaintiffs' suit. Plaintiffs prosecute this appeal from that judgment.

The question presented here is whether or not the trial court erred in directing a verdict for defendants.

Plaintiffs' complaint in effect charged the defendant, Terminal Railroad Association of St. Louis, with negligently permitting one of its engines to emit large volumes of dense black smoke which completely obscured the northerly drive of Eads Bridge, which crosses the Mississippi River between Illinois and Missouri at St. Louis, which caused the driver of the automobile in which the plaintiffs were riding to run into the rear end of an East St. Louis City Lines bus stopped on the bridge. It further charged that the defendant, East St. Louis City Lines, through one of its bus drivers, negligently drove said bus over the bridge to the point where the smoke had enveloped the northerly approach of the bridge and while the smoke was enveloping the northerly approach and obscuring the driveway from the bus driver, he negligently drove the bus into the smoke and then and there caused the same to stop without any signal or warning of any kind to traffic following in the rear, and that the bus remained standing for a long period of time, to-wit: several minutes, and account of said smoke was hidden from the view of traffic approaching from the rear. It further charged that plaintiffs were permanently injured as a result of the combined negligence of the defendants. Plaintiffs allege in their complaint that they were at all times in the exercise of due care and caution for their own safety.

Defendant, Terminal Railroad Association of St. Louis, denied the material allegations in the complaint. Defendant, East St. Louis City Lines, in its answer to the negligence charged against it, alleged in effect that due to no action on its part, the bus was enveloped in a cloud of smoke which presumably came from a railroad engine traveling on the lower deck of the bridge and the cloud of smoke became so intense and dense, that its bus driver had his vision so obscured that it was impossible for him to discern the roadway in front of him and that, acting with all due care and mindful of the duty he had toward the pas-

sengers who were riding in the bus, and the other vehicles traveling along the bridge, he brought the bus to a complete stop as close to the right-hand side of the bridge as he could reasonably do under the existing circumstances; that while in this position the bus was struck from the rear through no fault of its agent.

The only evidence submitted on the trial of this cause was that produced by plaintiffs. It consisted of the testimony of the following persons: Lloyd Adams, driver of the car; Jack Ames and Sarah Ann Ames, his wife, the plaintiffs who were riding in the front seat with the driver; and Charles Shaver and Al Hohenstein who were riding in the rear seat. A Mr. Throgmorton who was also riding in the rear seat was deceased at the time of the trial.

The occurrence in question happened about 8:00 o'clock on the morning of December 2, 1941, while Lloyd Adams was driving his car westwardly over Eads Bridge from East St. Louis, Illinois, to St. Louis, Missouri. The bridge has two decks, the upper deck being for vehicular traffic and the lower deck being for train traffic. The upper deck is divided into four traffic lanes, the north side being used for westbound traffic and the south side being used for eastbound traffic. There were all types of traffic using the northbound traffic lane at that time, including automobiles of all descriptions and the East St. Louis City Lines buses. Traffic approaching the bridge from East St. Louis travels along East Broadway street in that city. On street level the railroad track is higher than the roadway used by vehicular traffic, and as traffic moves towards the bridge up the approach, there is a point where both automobile traffic and railroad traffic are about on a level, and when the bridge proper is reached the railroad tracks are beneath the lanes traveled by vehicular traffic. At the east end of the bridge there is a slight jog from the westbound driveway on to the upper deck.

There was evidence that when Adams' car reached the top of the bridge, he noticed smoke in front of him as he was going west and that the smoke seemed to be coming from underneath the bridge; that he was traveling about 25 miles an hour and as soon as he saw the smoke, he took his foot off the accelerator and that automatically began to reduce the speed of his car; that the first smoke he came to obstructed his view so that he could not see too well, but it was not as heavy as later on; that after traveling a distance of about 40 feet, he hit a bank of smoke, really dense smoke, so dense that he could not see beyond the hood of his automobile and he proceeded in this dense smoke for 30 or 40 feet. Adams' car traveled a distance of about 70 or 80 feet from the time he first saw the smoke until his car struck the rear end of the bus. Neither the driver, Adams, nor the plaintiffs, nor any of the other occupants of the car saw the bus, at any time, before Adams' car ran into it. When the front part of the car struck the rear part of the bus the automobile came to a sudden stop "like hitting a brick wall."

The defendant's bus was stopped on the bridge at a point where the entire bridge was completely covered with a heavy blanket of smoke. The bus was on the right hand side of the bridge facing westwardly with the front end pulled over to the metal railing that divided the sidewalk, for pedestrian use, from the vehicular traffic lanes. The rear end of the bus was about three feet out from the railing. It was a yellow bus and was standing about 80 or 90 feet west of the east end of the bridge proper.

Adams, the driver, was familiar with the bridge and its approaches for some 20 or 25 years. He stated that it was the smoke that they got in that prevented him from seeing the bus; that it was not raining or anything, and it was an ordinary December day; the sun was not too bright that time of morning; that

the pavement was dry and that he could stop in 25 or 30 feet; that he did not stop after entering the dense smoke and made no attempt to stop but continued on some 30 or 40 feet and hit the back end of the bus. The plaintiffs were in the front seat of the car at all times with the same view out in front of the automobile as the driver. The driver stated that he did not recall either of the plaintiffs saying anything to him as he came up the incline and before he got to the bridge proper. Plaintiff, Jack Ames, said that as they came up the incline, he saw the smoke; that he did not tell Adams to stop but thought that he made the remark "slow down"; plaintiff Sarah Ames saw the smoke and judged that Adams could have stopped the car within a distance of 30 feet. The driver and Mrs. Ames testified that they did not see the bus nor did they know of its presence before the collision because of the dense smoke. There was no evidence to show how long the bus had been standing there before the collision.

As hereinbefore stated, the errors assigned are that the trial court erred in directing a verdict for the defendants.

█ █ Where there is no charge of wilful or wanton conduct on the part of the defendants, the plaintiffs have the burden of affirmatively showing that they were in the exercise of due care and caution for their safety at the time of the accident. (*Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270; *Dee v. City of Peru,* 343 Ill. 36; *Walker v. Illinois Commercial Tel. Co.,* 315 Ill. App. 553.) Passengers in a vehicle have a duty, where they have an opportunity to learn of danger and to avoid it, to warn the driver of the vehicle of the approaching danger, and they have no right because some one else is driving the vehicle to omit reasonable and prudent efforts on their own part to avoid danger. (*Dee v. City of Peru,* 343 Ill. 36; *Pienta v. Chicago City R. Co.,* 284 Ill. 246.)

■ ■ Persons approaching a place of danger have a duty to do so cautiously and with a proper degree of care for their own safety, the degree of care required being determined by the danger to which they are knowingly exposed. (*Little v. Illinois Terminal R. Co.*, 320 Ill. App. 163; *Moore v. Illinois Power & Light Corp.*, 286 Ill. App. 445.) A person has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of care for his own safety. (*Dee v. City of Peru*, 343 Ill. 36; *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270; *Little v. Illinois Terminal R. Co.*, 320 Ill. App. 163.)

The evidence presented on behalf of the plaintiffs shows that they first saw the smoke when their car was about 80 or 90 feet east of the place where the bus was stopped; that their car traveled about 40 feet in the first smoke that they came to which obstructed their view so that they could not see too well; that the driver of the car took his foot off of the accelerator which automatically reduced the speed of the car, but at no time did he apply his brakes; that the car was driven a distance of 30 or 40 feet in the dense smoke, which was so dense that the driver could not see beyond the hood of the automobile, before it ran into the rear end of the bus. The automobile could have been stopped at the speed at which it was traveling within a distance of 30 feet. Yet the driver made no attempt to stop the automobile upon becoming apprehensive of the danger involved in driving in the dense smoke where he could not see beyond the hood of his car nor did either of the plaintiffs warn the driver of the danger or request him to avoid the danger. Plaintiff, Jack Ames, testified that he thought he requested the driver to "slow down" when he first saw the smoke when they were coming up the approach to the bridge.

The question of contributory negligence is ordinarily a question of fact for the jury, yet when there

is no conflict in the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant. (*Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270; *Dee v. City of Peru,* 343 Ill. 36; *Wilson v. Illinois Cent. R. Co.,* 210 Ill. 603; *Beidler v. Branshaw,* 200 Ill. 425.)

Upon consideration of the evidence produced by plaintiffs together with all reasonable inferences to be drawn therefrom in its aspect most favorable to plaintiffs, we find that plaintiffs, Sarah Ann Ames and Jack A. Ames, were not in the exercise of due care and caution for their safety at the time and before the accident, and were guilty of contributory negligence.

The judgment of the trial court of St. Clair county directing a verdict for the defendants is hereby affirmed.

*Affirmed.*

CULBERTSON and SMITH, JJ., concur.