257 S.W.2d 221 (1953)
MEREDITH
v.
TERMINAL R. R. ASS'N OF ST. LOUIS.
No. 28463.
St. Louis Court of Appeals. Missouri.
April 21, 1953.
*222 Arnot L. Sheppard and Warner Fuller, St. Louis, for appellant.
Barnhart & Wood, C. V. Barnhart, Marvin S. Wood, and Robert D. Bransford, St. Louis, for respondent.
WOLFE, Commissioner.
This is an action for damages arising out of personal injuries sustained by reason of a collision between an automobile in which the plaintiff was riding and a locomotive operated by the defendant. From a verdict and judgment for the plaintiff the defendant prosecutes this appeal.
Meredith was riding in an automobile owned by his friend named Williams. Williams was driving and Meredith sat next to *223 him in the front seat. They were traveling eastwardly on Canal Street near the town of Brooklyn, Illinois. This street is about 30 feet wide and of concrete paving similar to the usual type of two-lane highways. It crosses a series of eight tracks not far from a railroad roundhouse. These tracks extend in a north and south direction at the crossing. The distance between them is not equally spaced and as they are approached from the west there is from 5 to 8 feet between each of the first three tracks and about 100 feet between the third and fourth tracks. Approximately 50 feet beyond the fourth track is the fifth and between the fifth, sixth, seventh and eighth tracks there are separating spaces from 8 to 12 feet. About 330 feet south of Canal Street is a railroad roundhouse and the tracks of the Southern Railway. At this point the Southern Railway crosses the tracks which extend to the north and cross Canal Street.
The plaintiff testified that the automobile was traveling between 15 and 20 miles an hour as it approached the tracks and that it slowed to a speed of 10 miles an hour as it proceeded to cross them. He said that he looked in both directions for any trains that might be coming and that he saw nothing but some engines, that were not in motion, near the roundhouse and three or four boxcars that were standing on the seventh track. These boxcars were just south of the highway with their most northern end but 5 feet from Canal Street. He heard no bell or other warning.
Meredith said that as they crossed the tracks he noticed that Williams was turning his head from side to side and that he maintained a speed of about 10 miles per hour. As they had just crossed the seventh track, upon which the boxcars were standing, Meredith saw a Diesel engine close upon them and traveling toward them from the south upon the eighth track. He opened the automobile door and attempted to jump clear of the impending collision, but he was struck by the engine and thrown to the highway.
The plaintiff called as a witness C. J. Schlanger, who was employed by the Terminal Railroad Association as a locomotive fireman on the Diesel engine. He testified that the Diesel had a steam engine coupled to its front end and it was backing in the direction of Canal Street and pulling the steam engine.
As the engine reached the point south of Canal Street where the Southern Railway tracks cross the track that they were upon, it was stopped and then started again. The witness said that there were two or three boxcars on the track to the west of the one upon which the Diesel was traveling and that these were near Canal Street. The boxcars vary in length from 45 to 55 feet. From his position in the cab the fireman could look north and he saw the automobile on the crossing just before his view of it was obstructed. He said that the driver of the automobile appeared to be in conversation with his passenger. He warned the engineer that an automobile was crossing and looked like it might not stop. He said that the engineer then shut the throttle and blew the whistle but kept the speed of the engine at about 12 miles per hour. When the automobile came into view in front of the engine, the engineer applied the brakes. It struck the automobile and traveled about 75 feet to a stop.
The plaintiff rested with the introduction of records of the Veterans Administration Hospital, which disclosed the injuries from which the plaintiff suffered.
The defendant then put on evidence which related to the general layout of the tracks and the area near the crossing and followed this with a shop employee who testified that there were no engines standing on the tracks near the roundhouse. It appears from this evidence and the photographs previously introduced in evidence that track No. 7, upon which the boxcars stood, curved to the west so that the boxcars upon it would obscure most of track No. 8 between Canal Street and the Southern Railway crossing from one crossing the tracks at Canal Street.
The engineer of the Diesel testified that as he approached Canal Street he looked toward the crossing and saw no automobile. After the train moved to a point where the boxcars obstructed his view the *224 fireman told him of the automobile. He said that he did not shut off the power or apply the brakes, but that he blew the horn and sounded the bell. He did not see the automobile until it was about 3 or 4 feet in front of the engine. He then applied the brakes and brought the engine to a stop in 40 feet.
Several witnesses testified on behalf of the defendant that the Diesel engine horn was sounding and the bell ringing as it approached Canal Street.
The petition charged the defendant with negligence on several counts, but the case was submitted to the jury only on the question of a negligent failure to stop the engine in time to have prevented the collision.
It is urged that the plaintiff failed to make a submissible case of negligence in that there was no substantial evidence of a failure on the part of the defendant to sound a warning. As we stated, the case was not submitted to the jury on that theory of negligence. The plaintiff's main instruction in part required the jury to find as follows:
"* * * that there was probable danger of a collision of said automobile and locomotive and injury to plaintiff and that defendant's employees in charge of and operating said locomotive knew of such danger, or in the exercise of ordinary care could have known thereof, in time thereafter, to have, by the exercise of ordinary care, stopped said locomotive with the means at their command and with safety to defendant's equipment and crew and by so doing could have prevented the collision mentioned in evidence and injury, if any, to plaintiff, and that defendant's said employees failed to stop said locomotive and that in so doing, failed to exercise ordinary care and were thereby negligent."
Since this instruction contains the only theory of negligence submitted to the jury, the question of whether or not the evidence regarding a failure to sound a warning was sufficient to be submissible upon that count of negligence, went out of the case.
As another reason for the contention that the plaintiff failed to make a submissible case, it is asserted that under the evidence the plaintiff was guilty of contributory negligence as a matter of law. We are cited to Tietze v. New York Central and St. Louis R. Co., Mo.Sup., 250 S.W.2d 486, and other cases of similar import, which hold that where a plaintiff had an unobstructed view of the tracks upon which he was struck he is guilty of contributory negligence if he crossed the tracks without looking. It is asserted that the view here was unobstructed, but the evidence most favorable to the plaintiff does not so appear. The boxcars on track 7 obstructed Meredith's view of track 8 for some distance. It may well have been that he saw the Diesel as it was stopped at the Southern Railway crossing, for he said that he saw some engines standing near the roundhouse, and that before he again glanced in that direction the Diesel may have been obscured by the boxcars.
Meredith was obliged under the law of Illinois to exercise ordinary care to discover the approach of any train and to warn the driver of the automobile of it. Scruggs v. Baltimore & Ohio R. Co., 287 Ill.App. 310, 4 N.E.2d 878; Ames v. Terminal R. Ass'n, 332 Ill.App. 187, 75 N.E.2d 42; Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901. If, however, the danger could not have been discovered in the exercise of ordinary care until the automobile was crossing track 7, then a warning to the driver would have been of no avail, for the collision was at that time inevitable.
We discussed at some length the law of Illinois on the question of what constitutes contributory negligence as a matter of law in the case of Busker v. New York Central R. Co., Mo.App., 149 S.W.2d 449, 455. In that case the plaintiff's view of an approaching passenger train was cut off by a passing freight train. He waited for the freight train to pass and then proceeded to cross the tracks where he was struck by the oncoming passenger train. In discussing the question of contributory negligence this court stated:

*225 "* * * the general rule which places upon a person the duty to look and listen before entering upon a railroad crossing is not an absolute one, but one that may be qualified by exceptional circumstances, such as existed in the cases cited, and which exist in the case at bar, and make the issue of negligence one for the jury because such circumstances created a problem over which it is believed reasonable minds might differ."
As in the Busker case, it appears that under the evidence here present the question of whether or not this plaintiff was negligent was a matter for the jury.
It is contended that the verdictdirecting instruction given at the request of plaintiff was erroneous because it is broader than the petition, in that it is not limited to wilful or wanton negligence on the part of the defendant as pleaded. Here again the defendant overlooks the fact that wilful and wanton negligence was one of the charges that was abandoned by the plaintiff upon submitting the case to the jury. In addition to the charge of wilful and wanton negligence the plaintiff charged primary common-law negligence in failing to stop the train. The instruction is predicated upon that alone, and since it was pleaded the instruction complained of is not broader than the petition.
Continuing its attack upon the same instruction defendant asserts that it is based upon the humanitarian doctrine which is not recognized by the law of Illinois. In its assertion that Illinois does not recognize the humanitarian doctrine the defendant is quite right. Cox v. Terminal R. Ass'n, 331 Mo. 910, 55 S.W.2d 685; Specht v. Chicago City Ry. Co., 233 Ill. App. 384; West Chicago St. Ry. Co. v. Liderman, 187 Ill. 463, 58 N.E. 367, 52 L. R.A. 655. But we have held that "`facts which will give rise to a cause of action under the humanitarian doctrine in Missouri will likewise give rise to a cause of action in Illinois, but for primary negligence only,' and of course contributory negligence is a bar to recovery. Williams v. East St. Louis Ry. Co., Mo.App., 100 S.W.2d 51, loc. cit. 55; Harting v. East St. Louis R. Co., Mo. App., 81 S.W.2d 973." Fullington v. Southeastern Motor Truck Lines, Mo.App., 254 S.W.2d 246, 250. Therefore, if the engineer by the exercise of ordinary care could have known that unless he stopped the engine it would probably strike the automobile, and he did nothing about it, Meredith had a cause of action for his injuries providing he was not negligent himself. The case therefore was not submitted upon the humanitarian doctrine as contended and the jury was fully instructed that if they found Meredith was negligent and that his negligence contributed to cause his injury he could not recover.
The defendant urges that the court erred in giving another instruction which informed the jury that the burden of proving contributory negligence rested upon the defendant. It is contended that under the law of Illinois the converse of this is true and that the plaintiff was, contrary to the instruction given, required to prove that he was free from contributory negligence.
Under the law of Illinois where, as here, the action is predicated upon the negligence of the defendant, the plaintiff has the burden of proving that he was not guilty of negligence contributing to the injury complained of. Greenstreet v. Atchison, Topeka & Santa Fe Ry. Co., 234 Ill. App. 339; May v. Illinois Power Co., 342 Ill.App. 370, 96 N.E.2d 631; West Chicago St. Ry. Co. v. Liderman, 187 Ill. 463, 58 N.E. 367, 52 L.R.A. 655. It is true that we are obliged to follow the substantive law of the state where the cause of action arose and the existence of the right to recover must be measured by the laws of that state. Woodard v. Bush, 282 Mo. 163, 220 S.W. 839; Wright v. Kansas City Structural Steel Co., 236 Mo.App. 872, 157 S.W.2d 582; Sing v. St. Louis-San Francisco Ry. Co., Mo.Sup., 30 S.W.2d 37.
The instruction is conceded to be correct if the law of Missouri is applicable. But it is asserted that the Illinois requirement is one of substance rather than procedure and for that reason we must follow the Illinois law. However, our Supreme Court in Hopkins v. Kurn, 351 Mo. *226 41, 171 S.W.2d 625, 626, 149 A.L.R. 762, stated that "the court at the forum determines according to its own Conflict of Laws rule whether a given question is one of substance or procedure", and it appears that the court has twice decided that the burden of proof is a procedural matter.
In Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053, loc. cit. 1057, the court discussed this question by saying:
"The appellant cites a number of Illinois cases which establish the rule that in order to recover for injuries caused by negligence it must be alleged and proved by the party injured that at the time he was injured he was observing ordinary care for his own safety. * * *
"The rules of evidence are a part of the law of the remedy and the law of the forum controls. It controls as to the burden of proof, the competency of witnesses and the weight of the evidence.
"* * * The rule in this state applies, that plaintiff's negligence which contributed to his injury is an affirmative defense which must be pleaded and proved in order to be available to a defendant."
Again in Connole v. East St. Louis & Suburban R. Co., 340 Mo. 690, 102 S.W.2d 581, 585, the court said:
"The accident occurred in Illinois and the law of Illinois, the lex loci, which has been pleaded, governs the substantive rights of the litigants * * * but the law of Missouri, the lex fori, governs the rules of evidence, the burden of proof, the competency of witnesses, the weight of the evidence, and other matters relating to the remedy."
We are cited to no authority holding contrary to the above cases, and we must therefore rule that the instruction placing the burden of proving contributory negligence upon the defendant was properly given.
An instruction was given to the effect that the plaintiff could not be held guilty of contributory negligence unless his negligence formed a part of the cause that produced the collision. It is claimed that this is erroneous in that there was no evidence warranting the conclusion that even though the plaintiff was negligent his negligence did not contribute to the cause of his injury. There was some evidence that the occupants of the automobile appeared to be in conversation and this and other circumstances testified to may have been sufficient to conclude that the plaintiff was to some extent negligent, but unless his negligence prevented him from keeping the required lookout for his own safety, in order to warn the driver of the automobile of any danger he should have observed, it did not contribute to his injury. Therefore the instruction was not erroneous upon that score and neither can it be said to be general or argumentative as charged. As stated in Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144, loc. cit. 1145:
"The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened."
Harding v. Kansas City Public Service Co., Mo.App., 188 S.W.2d 60; Tappmeyer v. Ryckoff, Mo.App., 45 S.W.2d 890.
The remaining assignments of error relate to the admission and exclusion of evidence.
The first of these is that the plaintiff was permitted to testify that he always looked for engines at the roundhouse as he crossed the tracks. The testimony is as follows:
"Q. When you passed over the crossing and saw the tracks, did you notice whether there were any engines at the roundhouse?
"By Mr. Sheppard: I object to that.
"By the Court: He may answer it.
"A. Yes, sir, I always looked.
"Q. Do you recall how many engines, or locomotives, you saw on this particular occasion? A. I saw about three or four."
*227 There was no objection to the answer, no motion to strike it, and although the phrase "I always looked" should have been stricken on proper motion, none was made, and there is therefore nothing presented for review.
The next error assigned goes to the following questions and answers:
"Q. Did you hear the sound of any train bell, or whistle, at any time when you were approaching that crossing, that series of tracks? A. No, sir.
"Q. Would you have been able to have heard a bell or whistle? A. Yes, sir.
"By Mr. Sheppard: I object to that, and move to strike it, as that is a conclusion of the witness, the jury can determine that."
There was no ruling by the trial court and the interrogation continued. But the evidence was not a conclusion invading the province of the jury as contended, for it was a statement of fact. Geers v. St. Louis Public Service Co., Mo.App., 247 S.W.2d 318; Gillespie v. Terminal R. Ass'n of St. Louis, Mo.App., 204 S.W.2d 598.
Again error is assigned because the court refused defendant's counsel the right to "impeach" the plaintiff by a portion of his deposition. The witness testified that he saw nothing coupled to the Diesel engine and in his deposition he had testified that the Diesel had nothing coupled to it. Just how this could be impeaching is not elaborated upon. Both are one and the same statement, for the witness was at both times testifying as to what he saw. The assignment is without merit.
It is also maintained that the court erred in permitting plaintiff to testify that he had been in the Army. This testimony came in during the course of his examination relating to the employment in which he had been engaged. At the time he had already testified that he had been treated at the Veterans Hospital, so it must have been evident that he had been in some branch of the Armed Services. At the present such a large number of our young men have seen military service that the fact that one of them is a veteran is an accepted, and not an unusual, status. While the fact that Meredith had been in the Army was not material to any issue in the case, it was a commonplace thing which could in no way prejudice the defendant.
Another assignment has to do with the plaintiff's examination of the locomotive fireman whom he had called as his own witness. There was some variance between the testimony he gave and his prior deposition. In Crabtree v. Kurn, 351 Mo. 628, 173 S.W.2d 851, 859, the general rule that one may not call a witness and then impeach him is again stated. But it is pointed out that "When, however, a party is unexpectedly surprised by unfavorable, adverse evidence given by his own witness, he may interrogate such witness as to previous inconsistent statements made by him and introduce testimony of other witnesses showing the previous inconsistent and contradictory statements." Plaintiff's counsel stated to the court that he was surprised by the testimony and under the ruling in the Kurn case, and the circumstances present, this was sufficient to permit the use of the deposition, and the court did not err in allowing it.
For the foregoing reasons, it is the recommendation of the Commissioner that the judgment be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.