(No. 479)

WILLIAM MATHIS AND IOWA NATIONAL MUTUAL INSURANCE COMPANY, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1959, Judge Wham dissenting.*

McLAUGHLIN, PATTON AND McLAUGHLIN, Attorneys for Claimants.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

This case arises out of an accident, which occurred at approximately 8:15 A. M. on August 9, 1957 on Illinois Route No. 78, approximately three-fourths of a mile south of the City of Prophetstown, Whiteside County, Illinois.

The record consists of the following:

1. Complaint
2. Departmental Report
3. Transcript of evidence
4. Abstract of evidence
5. Supplement to the record
6. Brief and argument of claimants
7. Statement, brief and argument of respondent
8. Commissioner's Report

A hearing was had in this case before Commissioner Presbrey on June 28, 1958.

At the time and place in question, claimant, William Mathis, was driving his 1957 Pontiac in a southerly direction at or near the stockyard, the drive of which was located on the east side of the road just north of the crest of the hill where the accident occurred. The

entrance or apron to the yard was about 100 to 150 feet wide.

Claimant, William Mathis, was on his way to work at the time of the accident. He was very familiar with the road, as it was the one on which he traveled to his place of employment, the Yorktown Lumber & Grain Company, where he was employed as office manager.

The weather was clear, the pavement was dry, and, as he approached the crest of the hill, knowing that the entrance to the stockyard was on the east side of the road, he looked to the left to determine whether or not there were any stock trucks pulling out onto the pavement. He could not see down the hill until he reached the crest, and it was approximately 200 feet from the crest of the hill to where the accident occurred.

There was no traffic behind or in front of him at said time, and he was driving at approximately 50 to 60 m.p.h. His attention was first called to a State Highway truck located on the west shoulder of the road, which he was traveling, with a man standing near it, and a man, whom he later learned was a State maintenance man, with his back towards him pouring tar, and working on the surface of the southbound traffic lane. He also noticed a truck traveling on the east side or northbound traffic lane, being a tractor-trailer driven by Carl Swanson, who testified at the hearing as to the location of the State truck and the State maintenance man working on the southbound traffic lane.

Claimant immediately applied his brakes, and turned into the northbound traffic lane. The tractor-trailer pulled to the shoulder of the road on the east side. Claimant's automobile turned counter-clockwise, and struck the left front portion of the trailer proceeding in a northerly direction.

The State employees were Rankin Murphy and Frank Weber, who were completing the patching of a portion of the highway in the southbound lane of travel, the patch being approximately 2 feet by 8 feet in size.

There is a slight discrepancy as to the distance from where the men were working to the crest of the hill. Mr. Weber testified that it was 250 feet from the crest of the hill to the scene of the accident, and claimant testified that it was from 150 feet to 200 feet south of the crest of the hill.

The record is clear as to the fact that the State employees, prior to commencing their work on the highway, did not erect metal or other signs warning traffic of the repair work in progress. Employees of the Division of Highways had been previously ordered when doing work of this nature on State highways to erect signals, signs, flags or other devices warning motorists of the presence of men on the highway doing repair work. This was both for the protection of motorists traveling upon said highways, as well as the State employees themselves.

There is no question but what the entrance on the east side of the road was familiar to the traveling public within that vicinity. It was a dangerous spot, being located near the crest of the hill, so that it was only normal that people familiar with the truck entrance would first look to the east to determine whether or not there were any trucks turning in or coming out of the yard. This is what claimant did, so that he was within 150 feet to 175 feet of Rankin Murphy when he first noticed him pouring tar on the highway. He immediately applied his brakes, and his car swerved. He turned onto the northbound traffic lane on the 18 foot highway, and came into contact with the tractor-trailer of Mr. Swanson, who was driving in a northerly direction. Mr. Swanson applied his

brakes, turned the tractor to the right, and reduced his speed to 35 to 40 m.p.h. He pulled the tractor off onto the shoulder, the trailer remaining in the northbound traffic lane, so that the impact took place on the shoulder on the east side of the road with the right front fender and right door of claimant's automobile and the left front of the trailer, approximately 30 to 35 feet north of where Mr. Rankin was working.

There was some question in regard to the car skidding when it hit a portion of the wet tar coated with pea gravel, which had been placed there by Frank Weber, who was standing off on the shoulder at the time of the impact.

Rankin Murphy during all this time did not leave the southbound traffic lane, but continued to work with his back facing north until after the collision. There appears to be no question but what he was standing upon the paved portion of the highway as claimant came over the crest of the hill, and when Mr. Swanson was driving his tractor-trailer north.

Respondent did not file an answer, so, therefore, a general denial or traverse of all allegations will be considered.

A Departmental Report was filed and received in evidence, and no question was raised as to the jurisdiction of the State of Illinois, Division of Highways, of this particular highway at the time of the accident. The Report also sets forth, and the statements are borne out by the evidence, that the concrete pavement at the location in question was 18 feet wide; that the pavement was bordered on each side by a concrete gutter section 3 feet in width; and, that an earth shoulder 10 feet in width exists back of each gutter section. The flag of each gutter

is 18 inches wide, thus making each lane of travel 10½ feet wide.

It appears from the Departmental Report that there were no signs in place either north or south of the accident site to indicate that highway maintenance operations were in progress. There was evidence, and it so appears in the Departmental Report, that skid marks were laid down both by claimant's automobile and Mr. Swanson's truck.

At the time of the accident claimant was 41 years of age, and was working for the Yorktown Lumber & Grain Company as office manager with a take-home pay of $82.52 a week.

Claimant was thrown from his vehicle, and was rendered unconscious for a short period of time. The injuries testified to consisted of a concussion, which resulted in double vision for approximately six weeks; and, abrasions of the scalp, which caused headaches for several months.

Claimant was removed from the scene of the accident by ambulance to a hospital in Morrison, and was hospitalized three days. He was home in bed two weeks, and returned to work one month later on a temporary basis. It was six weeks before he returned to work full time. He lost $340.00 in wages.

From the exhibits offered in evidence, it appears that claimant incurred doctor bills of $34.00, hospital expenses of $85.25, and ambulance bill of $15.00, which coupled with the loss of earnings make a grand total of $484.00.

Claimant, William Mathis, had a $50.00 deductible feature on his collision insurance policy with claimant, the Iowa National Mutual Insurance Company.

Count II is a claim on behalf of the Iowa National

Mutual Insurance Company, in which the damages to claimant's vehicle are set forth, as well as the settlement made with claimant, William Mathis, on August 21, 1957. This data is further corroborated by claimant's exhibit No. 2, an affidavit executed by John F. Mansfield, an adjuster for the Iowa National Mutual Insurance Company, which is as follows:

"TO WHOM IT MAY CONCERN:

I, John F. Mansfield, adjuster for the Iowa National Mutual Insurance Company, 605 Kahl Building, Davenport, Iowa, do depose and declare that on behalf of my company I effected a settlement with our policyholder, William Mathis, Prophetstown, Illinois on August 21, 1957. Said settlement was under this insured's collision policy FAP 20 154 583, which contained a $50.00 deductible clause on his 1957 Pontiac Convertible, Motor No. P857H-2308. Mr. Mathis' car was a total loss with a market value (new) of $3,100.00. Our auto damage appraiser's survey indicated this car should be depreciated in the amount of $300.00 due to 12,959 miles usage. After applying this depreciation of $300.00 and the $50.00 deductible, I effected a cash settlement with the insured in an amount of $2,750.00. Since net salvage recovery, after payment of towing and service charges of $23.00, was $317.00, the total loss to the company from this accident was $2,433.00. This figure of $2,433.00, plus our insured's $50.00 deductible, constitutes $2,483.00, which is our subrogation demand total. The salvage was sold to the Silvis Auto Wreckers on the basis of a high competitive bid of $340.00. Bearman's bid was $325.00.

(Signed) John F. Mansfield, Adjuster
Iowa National Mutual
Insurance Company"

Many authorities have been cited by claimants and respondent concerning the question of negligence and contributory negligence. There is no question but what the State of Illinois is not an insurer of motorists upon the highways, but the State does owe to the traveling public, and the traveling public has a right to expect that employees of the State will not create conditions in hazardous locations, such as the one in question, which could result and become the proximate cause of injury to it.

We have taken into consideration the location of the accident, being relatively close to the crest of the hill,

which would obscure the vision of a motorist traveling in a southerly direction without any warning whatsoever that there was work being performed on or in his lane of travel. The men working on the highway in claimant's lane of travel did create a condition, which required him to act under circumstances, which we consider would amount to a sudden emergency, particularly in view of the fact that he was familiar with the truck entrance on the east side of the road, and that he was not traveling at an unreasonable rate of speed considering the traffic, and the travel and use of the way prior to his reaching the crest of the hill.

In view of the fact that claimant was not warned that there was work being done in his traffic lane, and in view of the fact that he could not see the man on the highway pouring tar, or the truck traveling north, until he reached the crest of the hill, he had very little time for deliberation, and, he was, therefore, confronted with a sudden emergency. It appears from his actions that he acted as any ordinary prudent person would have acted under the same or similar circumstances, i.e., applied his brakes immediately, turned his automobile away from the man in front of him, and onto and across the fresh tar and pea gravel, which could very easily have caused his car to go out of control and into a skid. From his actions and the physical facts, we cannot find that Mr. Mathis was guilty of negligence, which was the proximate cause of the accident resulting in his injuries..

We believe that claimant has maintained the burden of proof that it was the negligence of respondent's employees in not erecting signs warning motorists traveling in the southbound traffic lane of the work being done on the highway, which was the proximate cause of the accident in question, particularly in view of the distance

from which the work was being done and the crest of the hill, and taking into consideration the truck entrance near the crest of the hill on the east side of the road, which were all hazardous. Respondent's employees are chargeable with, and should have acted accordingly to protect the traveling public.

It is, therefore, the finding of this Court that claimant has proven his case by a preponderance or greater weight of the evidence:

First: That he was free from contributory negligence after taking all the facts and circumstances into consideration;

Second: That it was the negligence of respondent's employees in creating the condition, which caused the accident, and it was respondent's negligence, which was the proximate cause of the accident resulting in injuries to claimant, William Mathis, and damages to the Iowa National Mutual Insurance Company.

Inasmuch as there are two claimants, William Mathis for personal injuries, including loss of earnings and the deductible portion of his insurance policy, and the Iowa National Mutual Insurance Company for its subrogation claim, awards are, therefore, made as follows:

William Mathis, the sum of $2,000.00;

Iowa National Mutual Insurance Company, the sum of $2,433.00, which takes into consideration the amount paid to claimant, William Mathis, less depreciation, salvage, towing and storage charges.

## DISSENTING OPINION

WHAM, J.

I respectfully dissent from the majority. I believe that the facts contained in the record of this case fail to

establish that claimant was in the exercise of due care for his own safety, and that the proximate cause of the occurrence was the alleged negligence of respondent.

The fact that there were no signs indicating the presence of a State employee working on the highway did not alleviate the necessity for claimant to keep a proper lookout down the highway ahead as he approached and proceeded over the crest of the hill. Had he done so, he would have seen the workman present on the highway in sufficient time to have signaled a warning with his horn, and reduced his speed in a manner that would not have thrown him onto the wrong side of the road and into the truck approaching from the opposite direction.

Although there was some discrepancy in the record regarding the distance from the crest of the hill to the place where the maintenance man was standing, the distance at which a man could be seen was definitely established to be 425 feet. Even allowing for more than normal reaction time, I believe that a driver in the exercise of reasonable care could have kept his automobile under control and on its own side of the road, and avoided striking both the approaching truck and the maintenance man.

The presence of the maintenance man on the highway created no different condition than would have been created by either a slow moving vehicle or a pedestrian lawfully upon the highway at that point. Claimant would have applied his brakes in precisely the same manner, regardless of what confronted him, as he came over the crest of the hill, and the same result would have occurred. It is, therefore, difficult for me to arrive at the conclusion that the lack of warning signs proximately caused the occurrence in question.

I feel that claimant himself was negligent in looking

to the left and away from the direction of travel, while approaching the crest of the hill without reducing the speed of his automobile so as to compensate for the time involved in looking away from the direction in which he was proceeding. He should have anticipated the possibility of something over the crest of the hill, which would have been visible to him in time to avoid striking it had he continued to look ahead.

It is this that accounts for his failure to see the maintenance man until it was too late, and, therefore, at the very least, proximately contributed to the occurrence, which resulted in his own injury.

Nor can claimant rely upon the sudden emergency doctrine. As was stated in *Sullivan* vs. *Heyer*, 300 Ill. App. 599, ''One cannot create an untoward situation or emergency by his own action, and then by reason of such situation so created be relieved from such responsibility as the law requires of a person acting under normal conditions.'' In *Dee* vs. *City of Peru*, 343 Ill. 36 at 44, the court stated: ''The law does not afford to one, who so exposes himself to danger, the privilege of recovering damages for an injury arising from his actions, which injury might have been avoided by the use of reasonable care for his own safety.''

For the above reasons, I believe that the claim should be denied.